STATE OF NORTH CAROLINA v. ANTOINE DENARD YOUNG, Defendant

No. COA03-257

(Filed 5 October 2004)

### 1. Evidence— hearsay—not offered for truth of matter asserted—corroboration

The trial court did not err in a possession with intent to sell and deliver marijuana case by allowing three officers to testify regarding statements made to them by another officer describing the activities of defendant and others witnessed by that officer during a surveillance operation, because: (1) the challenged testimony was offered not to prove the truth of the matters asserted therein, but rather to explain the officers' conduct after they arrived at the scene; (2) the trial court specifically instructed the jury that each officer's testimony was not offered for the truth of the matter asserted; and (3) while an officer's trial testimony did not specifically denominate any of the behavior as illegal drug activity, it cannot be said that the testimony of the other three officers was not corroborative of the officer's testimony.

### 2. Sentencing— improper punishment—exercising right to plead not guilty

The trial court erred by considering defendant's decision to plead not guilty to possession with intent to sell and deliver marijuana in determining his sentence, resulting in imposition of a harsher sentence based on defendant exercising his right to a jury trial on that charge, and the case is remanded for a new sentencing hearing because the totality of the trial court's comments evidenced an improper intent by the trial court to punish defendant for exercising his right to plead not guilty.

Appeal by defendant from judgment entered 22 October 2002 by Judge L. Todd Burke in Forsyth County Superior Court. Heard in the Court of Appeals 19 November 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Deborrah L. Newton, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Constance E. Widenhouse, for defendant-appellant.*

ELMORE, Judge.

Antoine Denard Young (defendant) appeals his convictions of possession with intent to sell and deliver marijuana and attaining habitual felon status. Defendant also appeals from the sentence imposed by the trial court following these convictions. For the reasons stated herein, we find no prejudicial error in the guilt-innocence phase of defendant's trial, but vacate his sentence and remand to the trial court for a new sentencing hearing.

The evidence presented by the State at trial tends to show the following: At approximately 6:00 p.m. on 5 August 2001, Officer Brett Moyer of the Winston-Salem Police Department was conducting surveillance from a vacant house on East 17th Street across from Cleveland Avenue Homes, a Winston-Salem public housing project in an area routinely patrolled by Officer Moyer, when he observed defendant, defendant's brother Robert Young, and five or six other people across the street. Officer Moyer testified that defendant was seated in a chair on the sidewalk next to a brown Pontiac automobile which was parked at the curb. Robert was leaning against the car, and the others were milling about on the sidewalk. Officer Moyer observed, through binoculars, a black male approach defendant. Defendant handed the black male what appeared to be a "plastic bag with something in it" and the black male handed defendant money, then walked away. Defendant handed the money to Robert, and at that point Officer Moyer directed another officer conducting the surveillance with him to begin videotaping the scene across the street. This videotape was introduced into evidence at trial and played for the jury. Officer Moyer testified that a heavyset black female then approached defendant's chair and appeared to converse with defendant. Both the black female and defendant were moving their arms, but they were positioned in such a way that Officer Moyer "couldn't see exactly what was happening[.]" The black female then approached Robert and shook his hand with a "palming handshake" in which she "cupped [her] hand," before walking away.

Officer Moyer testified that defendant then got up from his chair and walked a short distance through an opening in a fence and onto the Cleveland Avenue Homes property. Defendant approached one of the buildings and bent low to the ground near a crawl space vent at the building's base "for just a second" before standing up and returning to the sidewalk area with "his hand up carrying something in his hand." While at the crawl space vent, defendant's back was to Officer Moyer such that Officer Moyer "couldn't see[] . . . what, if anything,

[defendant] was doing." Defendant then walked over to the brown Pontiac parked at the curb near where he had been sitting and got into the vehicle on the front passenger side, and "got down low in the seat and . . . after a second" got out of the car.

Officer Moyer testified that throughout the surveillance he had been in radio contact with his "arrest team," which consisted of Winston-Salem Police Department patrol officers T.G. Porter, Mark Bollinger, and Steven Snyder, relating to them his observations and giving a physical description of both defendant and Robert. After observing defendant get into and out of the car, Officer Moyer requested that the arrest team come to the scene and take defendant and Robert into custody. Officers Porter, Bollinger, and Snyder arrived minutes later, and defendant and Robert were taken into custody without incident.

At trial, Officers Porter, Bollinger, and Snyder were each allowed to testify, over defendant's objection, regarding Officer Moyer's descriptions to them of the activity he observed during his surveillance operation. Before this portion of each officer's testimony, the trial court instructed the jury that this testimony was received only for corroborative purposes or for determining Officer Moyer's credibility. Officer Porter testified that after he arrived at the scene, Officer Moyer told him that defendant had engaged in some activity at the crawl space vent of the nearby Cleveland Avenue Homes building. Officer Porter then "walked over to the crawl space and . . . looked in and found a clear, plastic bag with four small Ziploc bags in it containing a green vegetable material. . . . [I]t was marijuana." Officer Porter testified that this was "consistent with the way individuals will package marijuana or other narcotics for sale[.]" Officer Bollinger testified as to Officer Moyer's description of the interaction between the black female and defendant and Robert. Officer Bollinger also testified that his search incident to the arrest of Robert revealed that Robert was carrying $192.00, mostly in small bills, and that Robert did not have any drugs or drug paraphernalia on his person. Finally, Officer Snyder testified that after Officer Moyer described to him defendant getting in and out of the brown Pontiac parked on the curb near where defendant had been sitting, Officer Snyder searched the car and found a small Ziploc bag containing marijuana under the front passenger seat. Officer Snyder also testified that his search incident to the arrest of defendant revealed no money, drugs, or drug paraphernalia on defendant's person.

At trial, the parties stipulated that the green vegetable matter seized by the officers from the crawl space vent and the car was marijuana, weighing a total of 6.6 grams. Defendant presented no evidence. After the jury returned its verdict finding defendant guilty of possession with intent to sell and deliver marijuana, defendant pled guilty to being a habitual felon. The trial court found no aggravating or mitigating factors and sentenced defendant from the presumptive range to between 96 and 125 months imprisonment. Defendant timely filed notice of appeal on 31 October 2002.

[1] By his first assignment of error, defendant contends that the trial court committed reversible error by allowing Officers Porter, Bollinger, and Snyder to testify regarding statements made to them by Officer Moyer describing the activities of defendant and others witnessed by Officer Moyer during the surveillance operation. Defendant argues that because the testimony of each officer contains some additional details not present in Officer Moyer's testimony, the challenged testimony went beyond corroboration of Officer Moyer's testimony and instead constituted inadmissible hearsay. We disagree.

The State asserts, and we agree, that the challenged testimony of Officers Porter, Bollinger, and Snyder as to observations related to them by Officer Moyer from his surveillance was offered not to prove the truth of the matters asserted therein, but rather to explain the officers' conduct after they arrived at the scene. We note at the outset that the trial court specifically instructed the jury that each officer's testimony was *not* offered for the truth of the matter asserted. The officers' conduct upon arrival included searching the crawl space vent area and the Pontiac, both areas Officer Moyer described to the arrest team as having been visited by defendant immediately before the arrest team was called in, and arresting defendant after marijuana was found in both locations.

Our Supreme Court has stated that:

[t]he North Carolina Rules of Evidence define "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c) (1999). Out-of-court statements that are offered for purposes other than to prove the truth of the matter asserted are not considered hearsay. *Specifically, statements are not hearsay if they are made to explain the subsequent conduct of the person to whom the statement was directed.*

*State v. Gainey*, 355 N.C. 73, 87, 558 S.E.2d 463, 473, *cert. denied*, 537 U.S. 896, 154 L. Ed. 2d 165 (2002) (citations omitted) (emphasis added); *see also State v. Canaday*, 355 N.C. 242, 248, 559 S.E.2d 762, 765 (2002).

In the present case, defendant first challenges the testimony of Officers Porter, Bollinger, and Snyder that Officer Moyer told each of them, prior to their arrival at the scene, that he had observed defendant involved in illegal drug activity. Defendant argues that because Officer Moyer never testified that he observed anything which he could positively identify as drugs during his surveillance, this testimony from the three arresting officers went so far beyond corroboration of Officer Moyer's testimony as to constitute inadmissible hearsay. However, we conclude that this testimony from each officer was offered not to prove that defendant was engaged in illegal drug activity, but rather to explain (1) why the arrest team was called to the scene and (2) each officer's subsequent conduct upon arrival, which consisted of Officer Porter searching the crawl space vent area and seizing marijuana found therein packaged in a manner indicative of sale; Officer Bollinger arresting Robert and seizing $192.00, mostly in small bills, from his person; and Officer Snyder searching the Pontiac, seizing marijuana therefrom, and arresting defendant. Accordingly, this testimony does not constitute inadmissible hearsay under the authority of *Gainey* and *Canaday*. Moreover, we disagree with defendant's contention that this testimony did not corroborate Officer Moyer's testimony.

While defendant correctly asserts that Officer Moyer never testified that he observed anything he could positively identify as illegal drugs during his surveillance, Officer Moyer did testify that he observed a black male approach defendant and hand defendant money in exchange for a "plastic bag with something in it," and that defendant then handed the money to Robert. Officer Moyer also testified that he observed a black female who first conversed with defendant while their arms were moving, then approached Robert and shook his hand with a "palming handshake" in which she "cupped [her] hand," before walking away. Officer Moyer further testified that he observed defendant walk to the crawl space vent area, bend low to the ground for a second, stand up and raise his hand with something in it, walk to the Pontiac parked near the curb, get in and sit low in the seat briefly, then get out of the car. While Officer Moyer's trial testimony did not specifically denominate any of this behavior as "illegal drug activity," we cannot say that the testimony of Officers Porter,

Bollinger, and Snyder that Officer Moyer, in summoning them to arrest defendant, so characterized the totality of the behavior he described at trial is not corroborative of Officer Moyer's testimony.

Defendant next challenges, on the same grounds, specific portions of each officer's testimony. First, defendant excepts to the trial court's admission of the following testimony by Officer Porter:

Q. [by the Assistant District Attorney]: Did you have any communication with Officer Moyer at that time?

A. Yes, ma'am.

Q. And what did he say to you?

A. . . . He advised us that, as we were arriving, [defendant] approached the little crawl space vent—

Q. Yes, sir.

A. —and had dropped something into that vent or that crawl space area.

[DEFENDANT'S TRIAL COUNSEL]: Objection.

THE COURT: This testimony is offered for corroborative purposes. It's not offered for the truth of the matter asserted. You may proceed. Objection overruled.

Q. So, after he indicated that there was some activity at the crawl space, what did you do, Officer?

A. I walked over to the crawl space.

Q. And tell the members of the jury what you found[] . . . .

A. . . . So, I walked over to the crawl space and I looked in and found a clear, plastic bag with four small Ziploc bags in it containing a green vegetable material.

We again note that the trial court instructed the jury that this testimony was not offered for the truth of the matter asserted. The transcript reveals that immediately after eliciting Officer Porter's testimony regarding Officer Moyer's statement to him about defendant's activity at the crawl space vent, the prosecutor proceeded to question Officer Porter about his subsequent search of the crawl space vent area. She did not follow up on Officer Porter's testimony that Officer Moyer told him that defendant "had dropped something" into the crawl space vent area, which was admittedly different from Officer

Moyer's testimony, from which the reasonable conclusion could be drawn that defendant instead took something out of the crawl space vent. Again, we conclude that this testimony from Officer Porter was offered not for the truth of the matter asserted, but rather to explain Officer Porter's actions, taken subsequent to Officer Moyer's statement to him about defendant's activity at the crawl space vent, of approaching the crawl space vent, searching it, and seizing therefrom marijuana packaged in a manner which he testified was indicative of sale. Accordingly, this testimony does not constitute inadmissible hearsay. *Gainey*, 355 N.C. at 87, 558 S.E.2d at 473; *Canaday*, 355 N.C. at 248, 559 S.E.2d at 765.

Defendant next challenges admission of the following testimony by Officer Bollinger, characterizing it as inadmissible hearsay:

Q. [by the Assistant District Attorney]: What information did you have about the activity that was being investigated on August 5th of 2001?

A. By radio traffic we were told that several subjects were involved in what appeared to be drug activity in the 1700 or—excuse me—thousand block of 17th Street, East 17th. We were given—

[DEFENDANT'S TRIAL COUNSEL]: Objection.

THE COURT: Overruled. Ladies and gentlemen, this is not offered for the truth of the matter asserted. This officer is testifying as to what another officer heard [sic]. You're to consider the evidence as presented in this courtroom to determine whether there was something illegal going on or not. You may proceed, [Assistant District Attorney].

Q. Officer, if you would tell the members of the jury[] . . . about what information you received upon arriving at the 1000 block of East 17th Street.

A. Basically, I was just told—I was given a description of a—of a subject involved in activity and was told to respond to that area and take that person into custody.

Q. And did you get any information about what activity specifically had been afoot, so to speak?

A. What I was told was that a—a female—well, I was given some descriptions. I was told that a black female would get a small

bag of what appeared to be marijuana from a—from a black male subject, and I was given his description, and that ·they—that the female would take the marijuana to a, what appeared to be, a buyer and that the—a transaction would take place and that the female would, in turn, take the money that she had obtained and hand it off to a different subject, a third party.

Q. Were you just given a description of the black male and what he was wearing that she received something from?

A. I was told that the—well, I was told that the—that she would receive items from the—or the marijuana, what appeared to be marijuana, from a black male wearing a white T-shirt and. blue jeans, and that, in turn, she would take the—the money that she got back and hand it to a black male wearing blue jean shorts and a white T-shirt that had a red emblem on it.

Q. When you arrived on the scene, did you find people who matched those descriptions?

A. Yes, ma'am.

Q. Were those persons taken into custody?

A. Yes, ma'am.

Again, we note that the trial court instructed the jury that this testimony was not offered for the truth of the matter asserted. The transcript indicates that immediately after eliciting Officer Bollinger's testimony regarding what Officer Moyer told him about the interaction between the black female and defendant and Robert, the prosecutor's line of questioning turned to Officer Bollinger's subsequent arrival at the scene, visual identification of defendant and Robert, and arrest of Robert. Again, the prosecutor did not follow up on Officer Bollinger's testimony that Officer Moyer told him that the black female would "get a small bag of what appeared to be marijuana" from defendant and "take the marijuana to . . . what appeared to be a buyer" and then "take the money that she had obtained and hand it off to" Robert, which testimony contained some additional details not present in Officer Moyer's trial testimony about his observations regarding the interaction between the black female and defendant and Robert. We note that while Officer Moyer's testimony on this point was less detailed, a reasonable conclusion that the black female was serving as a "middleman" in drug transactions involving defend-

ant could nevertheless be drawn from Officer Moyer's testimony that the black female first approached defendant in such a way that she obstructed Officer Moyer's view, conversed with him while moving her arms, and then moved towards Robert and shook his hand with a "palming handshake."

Again, we conclude that the challenged testimony from Officer Bollinger was offered not for the truth of the matter asserted, but rather to explain his actions, taken subsequent to Officer Moyer's statement to him about the interaction between defendant and Robert and the black female, of responding to the scene, visually identifying defendant and Robert, placing Robert under arrest, and seizing incident to the arrest $192.00 in mostly small bills from Robert's person. We therefore conclude that Officer Bollinger's testimony on this point does not constitute inadmissible hearsay. *Gainey*, 355 N.C. at 87, 558 S.E.2d at 473; *Canaday*, 355 N.C. at 248, 559 S.E.2d at 765.

Finally, defendant challenges admission of the following testimony by Officer Snyder, also characterizing it as inadmissible hearsay:

Q. [by the Assistant District Attorney]: Did Officer Moyer direct you to any other area where [defendant] had been to search?

A. Yes. Right adjacent to where there was a fence line and beyond that on the housing authority side, there's some vents, some—I guess they would be like basement vents to the—to the bottom of the building. [Officer Moyer] [d]irected me to that area where he told me via radio that [defendant] had gone back and forth to that area, that he believed that's where he was keeping his marijuana.

[DEFENDANT'S TRIAL COUNSEL]: Objection, move to strike.

THE COURT: Objection overruled. Ladies and gentlemen, once again, his testimony is offered for corroborative purposes. You may consider it as it corroborates what the witness testified to previously. If it's inconsistent with it, you can consider it as it effects the credibility of the witness. You may proceed.

Q. After Officer Moyer told you he believed that there was marijuana in the crawl space, was a search conducted of the crawl space?

[DEFENDANT'S TRIAL COUNSEL]: Objection to the form.

THE COURT: Overruled.

A. Yes, there was.

Q. What was located in the crawl space, Officer?

[DEFENDANT'S TRIAL COUNSEL]: Objection.

THE COURT: Overruled.

A. There was a small bag with some . . . $10 bags of marijuana. . . .

Q. Did you conduct a search of the vehicle that had been parked where [defendant] was standing?

A. Yes. Upon Officer Moyer advising me that he had also observed [defendant] go to the front passenger area of his vehicle towards the floorboard area and under his seat, I had responded to that area upon information Officer Moyer gave me and found a bag of marijuana under the—in that area also.

As with the challenged portions of Officer Porter's and Officer Bollinger's testimony, we note that the trial court instructed the jury that this testimony was not offered for the truth of the matter asserted. The transcript indicates that immediately after eliciting Officer Snyder's testimony that Officer Moyer told him to search the crawl space vent area because Officer Moyer believed "that's where [defendant] was keeping his marijuana," Officers Porter and Snyder proceeded to do so, where they recovered marijuana packaged in a manner consistent with its sale. Officer Snyder then testified that he searched the brown Pontiac "[u]pon Officer Moyer advising me that he had also observed defendant go to the front passenger area of his vehicle towards the floorboard area and under his seat," and re-covered marijuana from that location as well. As with the challenged testimony from Officers Porter and Bollinger, we conclude that this testimony from Officer Snyder was offered not for the truth of the matter asserted, but rather to explain his actions, taken subsequent to Officer Moyer's statements to him about his observations of defendant's activity at the crawl space vent and in the front seat of the brown Pontiac. We therefore conclude that the challenged por-tion of Officer Snyder's testimony does not constitute inadmissible hearsay. *Gainey*, 355 N.C. at 87, 558 S.E.2d at 473; *Canaday*, 355 N.C. at 248, 559 S.E.2d at 765.

Defendant's first assignment of error is overruled.

[2] Turning to his second assignment of error, defendant contends that the trial court improperly considered defendant's decision to plead not guilty to the possession with intent to sell and deliver marijuana charge in determining his sentence, resulting in imposition of a harsher sentence because defendant exercised his right to a jury trial on that charge. We agree.

Regarding the influence on a trial court's sentence of a criminal defendant's decision to not plead guilty and to pursue a jury trial, this Court has previously stated:

> Although a sentence within the statutory limit will be presumed regular and valid, such a presumption is not conclusive. *State v. Boone*, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977). "If the record discloses that the [trial] court considered irrelevant and improper matter in determining the severity of the sentence, the presumption of regularity is overcome, and the sentence is in violation of [the] defendant's rights." *Id.* A defendant has the right to plead not guilty, and "he should not and cannot be punished for exercising that right." *Id.* at 712-13, 239 S.E.2d at 465. Thus, "[w]here it can be reasonably inferred the sentence imposed on a defendant was based, even in part, on the defendant's insistence on a jury trial, the defendant is entitled to a new sentencing hearing." *State v. Peterson*, 154 N.C. App. 515, 517, 571 S.E.2d 883, 885 (2002).

*State v. Gantt*, 161 N.C. App. 265, 271, 588 S.E.2d 893, 897 (2003), *disc. review allowed*, 358 N.C. 157, 593 S.E.2d 83 (2003).

In the present case, our review of the record indicates that while hearing pre-trial motions, the trial court discussed with defense counsel defendant's prior record level. Following this discussion, the trial court stated as follows:

> Now, [defendant], if you pled straight up, I know the State is not going to offer you any pleas, but *if you pled straight up I'd sentence you at the bottom of the mitigated range.* But that's—that's about as good as we can get with these habitual felons[] . . . . (emphasis added)

The trial court then proceeded to discuss the likelihood that evidence of defendant's prior drug convictions would be admissible should defendant pursue a jury trial, as well as the futility of an instruction to the jury not to consider defendant's previous drug activity as evi-

dence of his guilt on the current charge. The trial court then stated as follows to defense counsel:

> Now, if you go to trial and he's convicted, I'll be perfectly honest with you, I'm not going to sentence him—I doubt I would sentence him in the aggravated range. I may, but it just depends upon how bad it is, but he definitely would probably get a sentence in the—he would definitely get a sentence in the presumptive range. I probably wouldn't go back to the mitigated range since I'm offering this now prior to trial, but I'll let you think about it, unless you already know that he's not interested in it.

Defendant thereafter chose not to plead guilty and exercised his right to a jury trial on the marijuana possession with intent to sell and deliver charge. After the jury returned its guilty verdict on that charge, defendant pled guilty to having attained habitual felon status. The trial court then proceeded to sentencing, stating as follows:

> All right. [Defense counsel], you care to be heard on behalf of your client? I believe I previously indicated what the Court's position would be at sentencing, but I'll still consider whatever you have to say.

Following defense counsel's brief argument for imposition of a mitigated sentence, the trial court found no aggravating or mitigating factors and, pursuant to the sentence enhancement required by defendant's habitual felon plea, imposed a sentence from the presumptive range for a class C felony. *See* N.C. Gen. Stat. § 14-7.6 (2003); *see also* N.C. Gen. Stat. § 15A-1340.17(c), (d) (2003).

We conclude that because it can be "reasonably inferred" on this record that defendant's sentence was based, at least in part, on his refusal to plead guilty and to instead pursue a jury trial, defendant is entitled to a new sentencing hearing. *Peterson,* 154 N.C. App. at 517, 571 S.E.2d at 885. Before the jury was empaneled, the trial court informed defendant that if he entered a plea of guilty to the possession with intent to sell and deliver charge, the trial court would "sentence [defendant] at the bottom of the mitigated range." The trial court then warned defendant that if he instead pursued a jury trial which resulted in a conviction, defendant "would definitely get a sentence in the presumptive range" and that the trial court "probably wouldn't go back to the mitigated range since I'm offering this now prior to trial[.]" We note that while these statements were made after a discussion of defendant's prior offense history, the record does not

indicate that the trial court had yet been made aware of what evidence, if any, might exist to support any of the statutory factors in support of a mitigated sentence. Following defendant's conviction on the drug charge and subsequent guilty plea on the habitual felon charge, the trial court stated that it had "previously indicated what the Court's position would be at sentencing" before imposing a sentence from the presumptive range, which was, indeed, consistent with its pre-trial expression of intent should defendant pursue a jury trial. We hold that the totality of these comments evidence an improper intent by the trial court to punish defendant for exercising his right to plead not guilty. *State v. Boone*, 293 N.C. 702, 712-13, 239 S.E.2d 459, 465 (1977). We therefore remand this matter to the trial court for a new sentencing hearing.

No error in trial, vacate and remand for resentencing.

Judges BRYANT and CALABRIA concur.