STATE OF NORTH CAROLINA v. MICHAEL DARRELL CRAWFORD

No. COA04-1086

(Filed 3 October 2006)

## 1. Burglary and Unlawful Breaking or Entering— instruction on lesser included offense not given—elements of greater offense satisfied

A first-degree burglary defendant was not entitled to an instruction on the lesser-included offense of misdemeanor breaking or entering where the State's evidence satisfied its burden of

proof on each element of the greater offense, and no evidence was offered to negate those elements.

**2. Sentencing— result of rejecting plea bargain—reasonable inference not demonstrated**

The court's statements, taken as a whole, did not allow a reasonable inference that a first-degree burglary defendant's sentence was based on his refusal to plead guilty.

**3. Sentencing— prior record level—stipulation**

Defendant stipulated to his prior record level when his counsel stated during a pre-trial plea-bargain discussion that defendant was a Level IV, and the State confirmed that record level during sentencing without objection by defendant.

Appeal by defendant from judgment entered 5 November 2002 by Judge L. Todd Burke in Forsyth County Superior Court. Heard in the Court of Appeals 21 August 2006.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Angel E. Gray, for the State.*

*Don Willey for defendant-appellant.*

HUNTER, Judge.

Michael Darrell Crawford ("defendant") appeals from a judgment entered 5 November 2002 consistent with a jury verdict finding him guilty of first degree burglary. For the reasons stated herein, we find defendant's judgment and conviction to be without error.

The State's evidence tends to show that on 28 May 2001, Carla Patterson, ("Carla"), her sister, Candace Patterson ("Candace"), and their roommate, Christine Crawford ("Christine"), the sister of defendant, received a call around 10:00 p.m. from defendant asking what they were doing and if they were going to bed. Carla told defendant that they would all be going to bed soon. Candace and Christine went to bed shortly thereafter and Carla remained on the sofa in the front room to watch television. The front door and screen were closed but not locked at that time.

Another call was made at 1:00 a.m. on the morning of 29 May 2001, however, Carla did not answer it. Sometime thereafter, Carla fell asleep on the sofa, but was awakened around 4:00 a.m. by a bumping noise. Carla discovered that the screen door was propped

open and that both her and Candace's purses were missing. Carla's purse contained personal identification, credit cards, a money order, $400.00 to $500.00 in cash, identification for her father, Charles Patterson, and her father's endorsed paycheck in the amount of $391.00 from Holiday Pools to be cashed and used to pay his bills. The women considered the possibility that defendant had taken the purses, due to the earlier phone calls and the fact that defendant had entered their residence in the night the week prior to the break-in, and had awakened Candace by sitting on her bed.

On 31 May 2001, defendant attempted to cash a $391.00 paycheck from Holiday Pools made out to Charles Patterson at the drive-thru of a Wachovia bank. After the teller noted that the identification was for a much older man than defendant, she instructed defendant to enter the bank. Defendant left the scene. The teller positively identified defendant as the individual who attempted to cash Charles Patterson's paycheck.

Two weeks following the break-in, Candace met her sister Jesse Patterson ("Jesse") at the Tee-Time bar, where she saw defendant playing pool with his brother, Jason. Candace heard defendant say, "I'm not worried about them bitches. I got them anyway." Jesse heard defendant say "I got you girls, I got your stuff." Candace threatened defendant with a pool cue, but was stopped by Jason, and then left the bar.

Defendant offered no evidence.

The jury returned a verdict of guilty as to first degree burglary and defendant was sentenced to 108 to 139 months in prison. Defendant appeals.

I.

[1] Defendant first contends that the trial court erred in refusing defendant's request to instruct the jury on the lesser-included offense of misdemeanor breaking or entering. We disagree.

"A defendant is entitled to have a lesser included offense submitted to the jury only when there is evidence to support that lesser included offense." State v. Smith, 351 N.C. 251, 267, 524 S.E.2d 28, 40 (2000). "If the State's evidence is sufficient to fully satisfy its burden of proving each element of the greater offense and there is no evidence to negate those elements other than defendant's denial that he committed the offense, defendant is not entitled to an instruction on the lesser offense." Id. at 267-68, 524 S.E.2d at 40.

STATE v. CRAWFORD

[179 N.C. App. 613 (2006)]

"The essential elements of felonious breaking or entering are (1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein." *State v. Williams*, 330 N.C. 579, 585, 411 S.E.2d 814, 818 (1992); *see also* N.C. Gen. Stat. § 14-54 (2005). Defendant concedes that the State's evidence was sufficient to submit the charge of first degree burglary to the jury, but contends that, similar to the case of *State v. Barlowe*, 337 N.C. 371, 446 S.E.2d 352 (1994), the requested instruction as to the lesser-included offense of misdemeanor breaking and entering should have been given. In *Barlowe*, conflicting evidence was presented as to the intent of the defendant to commit the felony of murder upon entering the home. *Id.* at 378, 446 S.E.2d at 356-57. The defendant testified that he loved the victim as a second mother and did not intend to injure anyone when he went to the home in search of his wife, that his rifle occasionally discharged accidentally, that he had activated the safety, and that the gun accidentally discharged when he stuck it through the door of the house. *Id.* at 378, 446 S.E.2d at 356. One of the State's witnesses corroborated that the defendant had offered the same explanation moments after the shooting. *Id.* at 378, 446 S.E.2d at 357. *Barlowe* concluded that:

> To determine whether this evidence is sufficient for submission of the lesser offense to the jury, we must view the evidence in the light most favorable to defendant. Applying this standard, we cannot say as a matter of law that the evidence does not permit a reasonable inference that defendant did not possess the requisite intent. The credibility of the evidence and whether in fact defendant did or did not possess the requisite intent is for the jury to decide.

*Id.*

Here, unlike in *Barlowe*, no conflicting evidence was offered as to defendant's intent to commit a felony, in this case, first degree burglary, upon entering the home. "The intent to commit the felony must be present at the time of entrance, and this can but need not be inferred from the defendant's subsequent actions." *State v. Montgomery*, 341 N.C. 553, 566, 461 S.E.2d 732, 739 (1995). The State presented clear evidence of each element of the crime, including defendant's intent, as evidenced by defendant's subsequent actions in attempting to cash Charles Patterson's check. *See Montgomery*, 341 N.C. at 568, 461 S.E.2d at 740 (holding that "the State's evidence that defendant stole money from a purse after he entered the apartment

was substantial evidence that he had the intent to commit larceny when he entered the apartment" and finding no error in the trial court's failure to submit the lesser-included offense of misdemeanor breaking and entering to the jury).

As the State's evidence was sufficient to fully satisfy its burden of proof on each element of the greater offense and no evidence was offered to negate those elements, defendant was not entitled to an instruction on the lesser-included offense, and the trial court did not err in denying the request.

## II.

[2] Defendant next contends that he was denied a fair sentencing hearing as the trial court improperly based its sentencing decision on defendant's rejection of a guilty plea. We disagree.

A sentence within the statutory limit will be presumed regular and valid. However, such a presumption is not conclusive. If the record discloses that the court considered irrelevant and improper matter in determining the severity of the sentence, the presumption of regularity is overcome, and the sentence is in violation of defendant's rights.

*State v. Boone*, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977). Defendant contends that the trial court improperly considered defendant's decision to reject a guilty plea in sentencing him, based on the following remarks by the trial court prior to the trial:

[THE COURT:] Now—now, young man, just want to make sure you understand this, a Class D felony, you're a prior record Level IV. If you were to plead before we start picking this jury, [and] the Court sentence[d] you in the mitigated range, you would be looking at five years and eleven months, one month shy of six years.

If we go to trial—Mr. Crawford?

[DEFENDANT]: Yes, sir.

THE COURT: We go to trial and you're convicted, you're going to be looking at somewhere[] between 94 and 117 months. So, you're looking between eight and close to ten years versus six years. So, you [are] guaranteed to be sentenced to at least two more years if you're convicted by a jury of first degree burglary versus whether you plead.

> All right. I just want to make sure you understand that so in the event you are convicted, I don't want you to think that no one gave you an opportunity to mitigate your losses. Okay?

Following defendant's jury trial, defendant was sentenced within the presumptive range as a Level IV offender to 108 to 139 months. Defendant contends that such a sentence was harsher than would otherwise have been imposed, based on the trial court's remarks.

"A defendant has the right to plead not guilty, and 'he should not and cannot be punished for exercising that right.' " *State v. Gantt*, 161 N.C. App. 265, 271, 588 S.E.2d 893, 897 (2003) (citation omitted).

> "Where it can reasonably be inferred from the language of the trial judge that the sentence was imposed at least in part because defendant did not agree to a plea offer by the state and insisted on a trial by jury, defendant's constitutional right to trial by jury has been abridged, and a new sentencing hearing must result."

*State v. Poag*, 159 N.C. App. 312, 324, 583 S.E.2d 661, 670 (2003) (citation omitted).

In *State v. Poag*, this Court held that a trial court's decision to state the terms of an accepted plea bargain was merely "an effort to make the plea bargain more definitive and eliminate any question that defendant might have about the resulting sentence that the trial court would impose in its discretion." *Id. Poag* concluded that such statements, standing alone, failed to show that the trial court's imposition of a harsher sentence following a jury trial was punishment for rejection of the plea offer, particularly as the trial court did not indicate at sentencing that it was imposing such a sentence as a result of the defendant's rejection of the plea. *Id. Poag* held that the trial court "was not limited by the initial terms of the plea bargain and was free to impose a fair and appropriate sentence after the jury returned a guilty verdict." *Id.*

Defendant cites as authority this Court's decision in *State v. Young*, 166 N.C. App. 401, 602 S.E.2d 374 (2004), *disc. review denied*, 359 N.C. 326, 611 S.E.2d 851 (2005). In *Young*, the trial court stated following discussion of pre-trial motions, " 'Now, [defendant], if you pled straight up, I know the State is not going to offer you any pleas, but *if you pled straight up I'd sentence you at the bottom of the mitigated range*. But that's—that's about as good as we can get with these habitual felons[.]' " *Id.* at 411, 602 S.E.2d at 380. After a discus-

sion of the likely admissibility of the defendant's prior drug convictions, the trial court stated:

> "Now, if you go to trial and he's convicted, I'll be perfectly honest with you, I'm not going to sentence him—I doubt I would sentence him in the aggravated range. I may, but it just depends upon how bad it is, but he definitely would probably get a sentence in the—he would definitely get a sentence in the presumptive range. I probably wouldn't go back to the mitigated range since I'm offering this now prior to trial, but I'll let you think about it, unless you already know that he's not interested in it."

*Id.* at 412, 602 S.E.2d at 380. Following the defendant's decision to proceed to trial and conviction by jury, the trial court stated at the sentencing conference, " 'All right. [Defense counsel], you care to be heard on behalf of your client? I believe I previously indicated what the Court's position would be at sentencing, but I'll still consider whatever you have to say.' " *Id.* Although the defendant made a brief argument for a mitigated sentence, the trial court found no mitigating or aggravating factors and imposed a sentence in the presumptive range. *Id.* at 412, 602 S.E.2d at 380-81. This Court found on the record in *Young*, that the defendant's sentence "was based, at least in part, on his refusal to plead guilty and to instead pursue a jury trial," and held that the defendant was entitled to a new sentencing hearing. *Id.* at 412-13, 602 S.E.2d at 381.

Here, similar to *Poag*, the trial court's remarks prior to trial served to clarify the terms of the offered plea bargain and eliminate questions regarding a subsequent sentence. A review of the record reveals that the trial court did not indicate at sentencing that it was imposing a sentence in the presumptive range as a result of defendant's rejection of the plea bargain. Unlike in *Young*, where no plea bargain had been offered, and the trial court specifically referenced the pre-trial discussion during sentencing and made reference to the trial court's previous stated position on sentencing, here the trial court allowed both attorneys to speak as to aggravating and mitigating factors without comment. The State offered the aggravating factors that defendant took advantage of a position of trust and that the sum of money stolen was large. Defendant offered no mitigating factors. The trial court then sentenced defendant in the presumptive range, stating: "The Court will make no finding of mitigating nor aggravating factors. Court will sentence the defendant to a minimum of 108 and a maximum of 139 months in the North Carolina Department of Corrections." The trial court's statements, taken as a

whole, do not allow a reasonable inference to be drawn that defendant's sentence was based on his refusal to plead guilty and to instead pursue a jury trial.

As defendant failed to show the existence of a reasonable inference that the trial court imposed a presumptive sentence as a result of defendant's decision to exercise his right to a jury trial, this assignment of error is without merit.

## III.

[3] Defendant finally contends that the trial court erred in sentencing defendant as a Level IV offender without proof by the State of his prior record level. We disagree.

N.C. Gen. Stat. § 15A-1340.14(f) (2005) states that prior convictions may be proved by any of the following methods:

(1) Stipulation of the parties.

(2) An original or copy of the court record of the prior conviction.

(3) A copy of records maintained by the Division of Criminal Information, the Division of Motor Vehicles, or of the Administrative Office of the Courts.

(4) Any other method found by the court to be reliable.

*Id.* " ' "While a stipulation need not follow any particular form, its terms must be definite and certain in order to afford a basis for judicial decision, and it is essential that they be assented to by the parties or those representing them. Silence, under some circumstances, may be deemed assent . . . ." ' " *State v. Alexander*, 359 N.C. 824, 828, 616 S.E.2d 914, 917 (2005) (citations omitted).

Prior to the commencement of the jury trial, during discussion of the potential plea bargain, defendant's counsel volunteered to the trial court that "[defendant] is a Level IV, Judge." During sentencing following defendant's conviction by the jury, the trial court again asked if defendant was a prior record level IV, which the State confirmed without objection by defendant. Defendant's affirmative statement as to his prior record level constitutes a stipulation for purposes of N.C. Gen. Stat. § 15A-1340.14(f). We therefore find this assignment of error to be without merit.

As the trial court did not err in failing to give an instruction as to the lesser-included offense of misdemeanor breaking and entering,

defendant failed to establish a reasonable inference that his presumptive sentence was punishment for his failure to take a plea bargain, and defendant's prior record level was stipulated to by counsel, we find no error in defendant's judgment and conviction.

No error.

Chief Judge MARTIN and Judge McCULLOUGH concur.