STATE OF NORTH CAROLINA
v.
BILLY RUSSELL LAND
No. COA08-407
Court of Appeals of North Carolina
Filed March 17, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.
McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III, and Kirby H. Smith, III, for Defendant-Appellant.
ERVIN, Judge.
Billy Russell Land (Defendant) appeals from a judgment entered on the basis of a jury verdict convicting him of possession with the intent to sell or deliver marijuana and Defendant's stipulation that he had attained the status of an habitual felon. The trial court sentenced Defendant to an active term of imprisonment of 80 to 105 months in the North Carolina Department of Correction. From this judgment, Defendant appeals. We find no error.
On 4 November 2006, Officer J. B. Stroud (Officer Stroud) of the Raleigh Police Department received information from an informant that "a black male wearing a red and blue hat was [standing] at the corner of Oakwood and Tarboro and had a quantity of marijuana in his boot." The informant who spoke with OfficerStroud had provided information to the police approximately 60 times between May and November of 2004 and had provided accurate information in all of his prior dealings with Officer Stroud.
Officer Stroud gave this information to his supervisor, who passed it along to Officer M.E. Glendy (Officer Glendy). Officer Glendy responded to the scene rather than Officer Stroud because Officer Stroud was working "on a different end of [the project]." At the time that he received the information provided by the informant, Officer Glendy was four blocks away from the location specified in that information.
Immediately after receiving the informant's information, Officer Glendy drove to the intersection of Oakwood and Tarboro Streets. At that time, Officer Glendy observed three people standing on the sidewalk, one of whom was wearing a red and blue hat. Officer Glendy then parked at the intersection of Tarboro and Jones Streets and radioed for Officer B.A. Howard (Officer Howard) to meet him. After both officers arrived at the intersection, they got out of their vehicles and approached the location specified by the informant. At that point, the following events transpired:
[We] indicated to the defendant that we had received a call on him in reference to drug activity. He became very loud, boisterous, agitated[,] [and] [v]ery verbally abusive at which point he was seated on the curb. . . . [Defendant] [h]ad the typical fight or flight syndrome. . . . I could tell by his actions that he was fixing (sic) to either fight or . . . run[.] [He was] looking around, looking for avenues of escape or looking for a way to assault one of us [so that he] could escape.
As a result, Defendant was handcuffed for the officers' protection. According to Officer Glendy, "[e]ven handcuffed he was fidgeting around, [and] did not want to stay still." Officer Glendy searched Defendant's "legs, socks and boot[s]" and discovered "a bag containing ten small individually wrapped plastic bags of marijuana . . . in his sock which was tucked into his boot." Defendant also possessed $34. Officer Glendy told Defendant that he was under arrest. Defendant responded by stating that the policemen "had planted the drugs on him."
Defendant was taken to the Drug Enforcement Unit on Hillsborough Street, where officers searched him again and discovered two additional small bags of marijuana in his other sock. Once again, Defendant stated that he did not possess any drugs and that the drugs had been planted on him. Officer Glendy and the other officers "laughed" at Defendant's assertion, at which point Defendant began to laugh as well. Officer Glendy said, "you have got to be kidding me," at which point Defendant responded, "I have to try something."
On 14 February 2006, Defendant movedpro se to suppress the evidence stemming from the officers' search of his person. The trial court subsequently denied Defendant's motion to suppress by means of a written order dated 11 September 2007.
This matter came on for trial on 24 September 2007. On 25 September 2007, Defendant "knowingly, willfully and voluntarily" consented that his counsel would "be allowed to admit to the jury during closing argument that the Defendant is guilty of the lesser included offense of Possession of Marijuana." On the same date, the jury found Defendant guilty of possession with the intent to sell or deliver marijuana. Following the return of the jury's verdict, Defendant stipulated that he had attained the status of an habitual felon. Based upon the jury's verdict and Defendant's stipulation, the trial court entered judgment sentencing Defendant to an active term of imprisonment in the custody of the Department of Correction of 80 to 105 months. From this judgment, Defendant appeals.

I: Motion to Suppress
In his first argument, Defendant contends that the trial court erred by denying his pretrial pro se motion to suppress evidence obtained as a result of a search of his person. Defendant is not, however, entitled to appellate relief from the trial court's order. Since Defendant did not object to the admission of this evidence at the time it was offered at trial, he has waived appellate review of this issue. See State v. Grooms, 353 N.C. 50, 66, 540 S.E.2d 713, 723 (2000) (stating that "a pretrial motion to suppress, a type of motion in limine, is not sufficient to preserve for appeal the issue of admissibility of evidence . . . and defendant waived appellate review of this issue by failing to object during trial").
Moreover, it is well-established that a warrantless investigative detention and a subsequent search incident to arrest can be based on information supplied by a known informant of proven reliability. State v. Stanley, 175 N.C. App. 171, 622 S.E.2d 680 (2005); State v. Nixon, 160 N.C. App. 31, 584 S.E.2d 820 (2003). The trial court's findings, which have ample record support, demonstrate that the search at issue here was based on an investigative detention and subsequent arrest justified by information supplied by a known informant of proven reliability that was adequately verified by investigating officers and on inferences reasonably drawn from Defendant's conduct upon being approached by the investigating officers. The presence of such a known and reliable informant, adequate verification of the information supplied by the informant, and the defendant's conduct upon being approached by investigating officers distinguishes this case from cases such as State v. Hughes, 353 N.C. 200, 539 S.E.2d 625 (2000), which involved searches based on information received from anonymous tipsters. As a result, even if we were to reach the merits of Defendant's claim, he would not be entitled to any relief. This assignment of error is overruled.

II: Motion to Sequester Witness
In Defendant's next argument, he contends that the trial court erred in denying his motion to sequester witnesses. We disagree.
"A ruling on a motion to sequester witnesses rests within the sound discretion of the trial court, and the court's denial of the motion will not be disturbed in the absence of a showing that the ruling was so arbitrary that it could not have been the result of a reasoned decision." State v. Call, 349 N.C. 382, 400, 508 S.E.2d 496, 507-508 (1998).
At the commencement of trial, counsel for Defendant urged the trial court to allow Defendant's pro se motion for sequestration of witnesses, stating that the police officers had already "heard each other testify in the suppression hearing, but we would like them to be sequestered for purposes of the trial." The State opposed allowance of Defendant's motion on the grounds that:
[It is] water under the bridge at this point. The officers were all present during the [suppression hearing] . . . and heard each other's testimony, and if the defendant's concern is that they might conform their testimony to one another, that's something that they are on the record under oath already as to what their testimony is.
When asked whether he could "think of any additional reason [for the court to allow] a motion to sequester[,]" counsel for Defendant stated: "No, your Honor."
In seeking relief from this Court, Defendant argues that there was "no harm" in allowing the motion. For that reason, according to Defendant, the court abused its discretion in denying the motion. We find this logic unconvincing. A trial court's decision on a motion for sequestration of witnesses is discretionary in nature and will not be disturbed on appeal "absent . . . a showing that the ruling was so arbitrary that it could not have been the result of a reasoned decision." State v. Call, 349 N.C. 382, 400, 508 S.E.2d 496, 507-508 (1998). Because the officers had already heard each others' testimony and because Defendant advanced no other reason in support of his sequestration motion, we cannot say that the trial court's decision to deny Defendant's motion constituted an abuse of discretion. Therefore, we overrule this assignment of error. See State v. Barrow, 276 N.C. 381, 384, 172 S.E.2d 512, 514 (1970) (stating that courts "should not arbitrarily refuse to enforce the rule, nor should litigants or lawyers be permitted to require it arbitrarily").

III: Hearsay
Defendant next argues that the trial court erred by admitting testimony by Officer Stroud which contained statements made by the confidential informant. Defendant challenges the admission of this evidence as inadmissible hearsay. We disagree.
The North Carolina Rules of Evidence define "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2007). Out-of-court statements offered for purposes other than to prove the truth of the matter asserted are not hearsay. State v. Call, 349 N.C. 382, 409, 508 S.E.2d 496, 513 (1998). More particularly, statements are not hearsay if they are admitted for the purpose of explaining the subsequent conduct of the person to whom the statement was directed. State v. Coffey, 326 N.C. 268, 282, 389 S.E.2d 48, 56 (1990).
In the instant case, Defendant contends that the following testimony from Officer Stroud contained inadmissible hearsay: Officer Stroud testified that he received a telephone call from a confidential informant who said that a black male with a red and blue hat would be standing at the corner of Tarboro and Oakwood Streets and that the man had marijuana in his boot. At trial, the court allowed the admission of this testimony subject to the following limiting instruction: Members of the jury, the evidence you are about to hear has been admitted into evidence for a limited purpose. The evidence you are about to hear is not being admitted into evidence to prove the truth of any matter asserted therein, but rather solely for the purpose of then showing this witness' reaction thereto. It is not offered into evidence for substantive purposes. It is not offered into evidence to prove the truth of any matter asserted, but limited solely to show this witness' reaction.
On appeal, Defendant contends that, because he offered to stipulate that the police had received a tip from a confidential informant, the court erred by admitting Officer Stroud's testimony. We disagree with this reasoning. The question for the trial court was not whether the Defendant's stipulation would have been "sufficient" to serve the same purpose sought to be achieved through the admission of the disputed evidence, but rather whether the evidence the State sought to admit was "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2007). Here, Officer Stroud's testimony was not offered to prove the truth of the matter asserted, but rather to explain the officers' subsequent actions. Without Officer Stroud's statement, it would have been difficult for jurors to understand why the officers approached Defendant at a time when he appeared to be innocently standing by the roadside. As the prosecutor explained at trial, "it's important for a jury to understand why officers do what they do. They don't approach people and search them out of the blue for no reason at all." We conclude that the testimony regarding the statement made by the confidential informant was not offered to prove the truth of the matter asserted, but rather to "explain the subsequent conduct of the person to whom the statement was directed." Coffey, 326 N.C. at 282, 389 S.E.2d at 56. Specifically, the testimony was admitted for the limited purpose of explaining why the police approached Defendant, and the court properly instructed the jury that this was the sole purpose for which they could consider the evidence. See State v. Gainey, 355 N.C. 73, 86-88, 558 S.E.2d 463, 473 (2002); State v. Young 166 N.C. App. 401, 406-09, 602 S.E.2d 374, 377-79 (2004). Accordingly, the trial court did not err in allowing the admission of this testimony for non-hearsay purposes.
Defendant also asserts that Officer Stroud's testimony regarding the statements made by the confidential informant violated his constitutional right to confrontation. This claim is not properly before this Court, since the only objection to this testimony that the Defendant lodged at trial relied on the prohibition against the admission of hearsay. Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal.State v. Benson, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988). Furthermore, "admission of non hearsay `raises no Confrontation Clause concerns.'" United States v. Inadi, 475 U.S. 387, 398 n.11, 89 L. Ed. 2d 390, 400 n.11 (1986) (quoting Tennessee v. Street, 471 U.S. 409, 414, 85 L. Ed. 2d 425, 431 (1985)); see also State v. Jones, 322 N.C. 406, 414, 368 S.E.2d 844, 849 (1988). Thus, since the challenged testimony was admitted for a non-hearsay purpose rather than for the truth of the matter asserted, the admission of this testimony does not implicate any confrontation-based concerns.
For the foregoing reasons, the associated assignments of error are overruled.

IV: "Fight or Flight"
Defendant next argues that the trial court erred by allowing Officer Glendy and Officer Howard to testify that Defendant exhibited the "typical `fight or flight' syndrome." Because Defendant did not object to the admission of this testimony at trial, he is only entitled to appellate relief in the event that the trial court's failure to act constituted "plain error." We conclude that it does not.
"A reversal for plain error is only appropriate in the most exceptional cases." State v. Duke, 360 N.C. 110, 138, 623 S.E.2d 11, 29 (2005).
Before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. In other words, the appellate court must determine that the error in question "tilted the scales" and caused the jury to reach its verdict convicting the defendant. Therefore, the test for "plain error" places a much heavier burden upon the defendant than that imposed by N.C.G.S. § 15A-1443 upon defendants who have preserved their rights by timely objection. . . . [T]he defendant could have prevented any error by making a timely objection. Cf. N.C.G.S. § 15A-1443(c) (defendant not prejudiced by error resulting from his own conduct).
State v. Raines, 362 N.C. 1, 16, 653 S.E.2d 126, 136 (2007) (quoting State v. Walker, 316 N.C. 33, 39, 340 S.E.2d 80, 83-84 (1986) (citations omitted)).
"A witness may . . . testify to a matter [if] evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." N.C. Gen. Stat. § 8C-1, Rule 602 (2007). "Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself." Id. Generally, a witness who is not an expert may testify as to "opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." State v. Williams, 319 N.C. 73, 78, 352 S.E.2d 428, 432 (1987) (quotation omitted). "[A] witness may state the instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time." Williams, 319 N.C. at 78, 352 S.E.2d at 432 (quotation omitted).
In the instant case, the officers left their vehicles, approached Defendant, and advised him that they had received a call about his drug activity. Defendant became loud and verbally abusive, leading the officers to ask Defendant to seat himself on the curb. Defendant began to look around furtively. Officer Glendy stated that "[he] could tell by [Defendant's] actions that he was [planning] to either fight or . . . run[.]" Defendant was "looking for avenues of escape[.]" Officer Howard stated that Defendant was "looking for a place to run or fight[.]" Defendant did not object to any of this testimony at trial.
We conclude that the officers' statements were "instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of [Defendant], . . . derived from observation of a variety of facts presented to the senses[.]" Williams, 319 N.C. at 78, 352 S.E.2d at 432. These statements were "helpful to a clear understanding of [the officers'] testimony [and the] the determination [of facts] in issue[.]" N.C. Gen. Stat. § 8C-1, Rule 701 (2007). Furthermore, we do not believe that the statements were "so prejudicial" that, absent the admission of the officers' testimony, the jury would have reached a different verdict. As a result, the trial court did not commit plain error by allowing the admission of the challenged testimony. This assignment of error is overruled.

V: Miranda
In his final argument, Defendant contends that the trial court erred by allowing the admission of his statement that, "well, I have got to try something[.]" Defendant argues that the trial court's denial of his motion to suppress this inculpatory statement made at the police station, at a time when he was in "custody" for purposes of Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), was error because no Miranda warnings were given. We disagree.
At the outset, we note that the trial court's findings of fact following a hearing on the admissibility of Defendant's statements are binding on this Court and conclusive on appeal if supported by competent evidence, even if that evidence is conflicting. State v. Eason, 336 N.C. 730, 745, 445 S.E.2d 917, 926 (1994). The trial court's conclusions of law, however, are reviewable de novo. See Barber, 335 N.C. 120, 129, 436 S.E.2d 106, 111 (1993).
The State does not contend that Defendant was warned in the manner required by Miranda prior to making the challenged statements.[1] Therefore, the essential issue before this Court is whether, under the circumstances, such a warning was necessary. Miranda recognized "the danger of coercion [that] results from the interaction of custody and official interrogation," Illinois v. Perkins, 496 U.S. 292, 297, 110 L. Ed. 2d 243, 251 (1990), which "'subjugate[s] the individual to the will of his examiner' and thereby undermine[s] the privilege against compulsory self-incrimination[.]" "[I]nterrogation' [is] `[a] practice that the police should know is reasonably likely to evoke an incriminating response from a suspect.'" State v. Smith, 178 N.C. App. 134, 140, 631 S.E.2d 34, 38 (2006) (quoting Rhode Island v. Innis, 446 U.S. 291, 301, 64 L. Ed. 2d 297, 308 (1980)).
The trial court made the following finding of fact:
[No] question was asked by any law enforcement officer. . . . [D]efendant made a spontaneous utterance that the drugs had been planted on him and when the officers laughed, the defendant stated I have got to try something and then the defendant laughed. The defendant was in custody at this time.
The trial court concluded that no constitutional right was violated by Officer Glendy's statement, "you've got to be kidding me[,]" or the officers' laughter. The court found that Defendant knew that he was in the presence of law enforcement officers and that, because the officers did not question Defendant, a Miranda waiver was unnecessary.
The trial court's findings of fact are binding upon this court in the event that they are supported by competent evidence. State v. Buchanan, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001). A thorough review of the transcript and record in the present case reveals that there was competent evidence to support the trialcourt's findings of fact. Although the trial court's conclusions of law are subject to de novo review by this court, State v. McArn, 159 N.C. App. 209, 211-212, 582 S.E.2d 371, 376 (2003), we conclude that the trial court correctly determined that the investigating officers did not engage in any conduct that triggered the necessity for administering Miranda warnings. More particularly, we do not believe that laughter or Officer Glendy's expression of incredulity constituted "words or action on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Innis, 446 U.S. at 301, 64 L. Ed. 2d at 308; see also State v. Ladd, 308 N.C. 272, 281, 302 S.E.2d 164, 170 (1983) ("quip" or off-hand remark did not constitute custodial interrogation sufficient to require the administration of Miranda warnings). Thus, we hold the trial court properly concluded that Defendant initiated his response to the officers' statement and laughter. His responsive comments did not result from an unconstitutional interrogation; consequently, no Miranda warnings needed to be administered as a precondition for the admission of Defendant's statements. As a result, this assignment of error is overruled.
For the foregoing reasons, we find that Defendant received a fair trial free from prejudicial error.
NO ERROR.
Judges WYNN and HUNTER, Robert C.
Report per Rule 30(e).
NOTES
[1] The State argues that Defendant failed to preserve the validity of the trial court's refusal to suppress his statements to the police on constitutional grounds because Defendant failed to make a pre-trial motion to suppress his statements. Although Defendant failed to file such motion prior to trial, Defendant objected to the admission of the evidence during trial. At that time, the trial court specifically asked whether the "objection raised is an objection . . . based on Miranda[,]" to which counsel for Defendant stated, "Yes, your Honor. I haven't seen any evidence or . . . discovery that he waived his rights." Although the State might have argued that Defendant's motion was untimely pursuant to N.C. Gen. Stat. § 15A-975, the State did not challenge Defendant's motion at trial on that basis, and the Court denied Defendant's motion on the merits. N.C. Gen. Stat. § 15A-975 states, in pertinent part, that "the defendant may move to suppress evidence only prior to trial unless the defendant did not have reasonable opportunity to make the motion before trial or unless a motion to suppress is allowed during trial under subsection (b)[,]" which states that "[a] motion to suppress may be made for the first time during trial when the State has failed to notify the defendant's counsel or, if he has none, the defendant, sooner than 20 working days before trial, of its intention to use the evidence, and the evidence is: (1) Evidence of a statement made by a defendant[.]" Neither Defendant nor the State has addressed the issue of whether Defendant's motion was properly submitted during trial in accordance with N.C. Gen. Stat. § 15A-975(b). However, we find no indication in the record that the Defendant received pretrial notice of the State's intention to use the evidence. The trial court ruled on the merits of the motion, and we conclude, based on the state of the record and the nature of the arguments made by the parties, that we must review the merits of the trial court's ruling allowing Defendant to move to suppress evidence and, thereafter, denying the motion.