STATE OF NORTH CAROLINA v. WILLIAM EARL FULLER, Defendant

No. COA05-769

(Filed 1 August 2006)

## 1. Indecent Liberties— theory not charged in indictment— principal or aider and abettor

The trial court did not commit plain error by instructing the jury that it could convict defendant of indecent liberties under either a principal or aiding and abetting theory even though the original indictments charged him as a principal but the superseding indictments later charged him only as an aider and abettor, because: (1) allegations of aiding and abetting are not required to be in an indictment since aiding and abetting is not a substantive offense but just a theory of criminal liability; (2) the superseding indictments simply placed defendant on notice that he would have to defend as to a different theory of guilt, but not a different criminal offense; and (3) the fact that the State presented evi-

dence tending to show that defendant committed indecent liberties as a principal as well as an aider and abettor did not mean the State offered evidence of commission of an offense not charged in the indictment.

**2. Constitutional Law— right to unanimous jury—indecent liberties—first-degree rape**

Defendant was not denied his constitutional right to a unanimous jury in a double count of indecent liberties with a child and triple count of first-degree rape of a child case by the State's presentation of evidence of a greater number of sexual acts than there were charges, and the trial court's instructions and verdict sheet failing to require the jury to unanimously agree on which specific criminal acts defendant committed before finding him guilty, because: (1) a defendant may be convicted of indecent liberties even if the juror considered a higher number of incidents of immoral or indecent behavior than the number of counts charged and the indictments lacked specific details to identify the specific incidents since while one juror may have found some incidents of misconduct and another juror might have found different incidents of misconduct, the jury as a whole found that improper sexual conduct occurred; (2) regarding the three counts of first-degree rape, while the victim's testimony and statement to the police suggested that other incidents may have occurred, the evidence and argument focused in detail upon only three specific occasions of intercourse which was the same number of instances as verdict sheets; and (3) a general instruction on unanimity was given to the jury.

**3. Judges— inappropriate comments to defense counsel—no chilling effect**

The cumulative nature of the trial judge's inappropriate comments to defense counsel in a double count of indecent liberties with a child and triple count of first-degree rape of a child case did not taint the atmosphere of the trial to the detriment of defendant, because: (1) the trial judge's criticisms of defense counsel's questions did not necessarily belittle counsel, but instead suggested that the judge was working with counsel to ensure that the questions were asked in language that a sixth-grader such as the victim would understand, while other interventions rephrased questions of defense counsel to comply with the foundational requirements for admission of evidence such as reputation testimony; (2) the trial judge's expressions of impatience reflected the

STATE v. FULLER

[179 N.C. App. 61 (2006)]

fact that defendant was attempting to elicit testimony that was not admissible and counsel was making it difficult to project the likely time line of the trial; (3) other remarks depended on the inflection used and could not be determined merely from the transcript; and (4) the trial judge on multiple occasions vigorously defended defense counsel's competence in open court in the face of repeated attacks by defendant and his family.

**4. Sentencing— prior record level—multiple convictions in same week in different courts**

The trial court did not err in a double count of indecent liberties with a child and triple count of first-degree rape of a child case by including in its calculation of defendant's prior record level two separate convictions received on the same day in the same county (one in district court and the other in superior court), because: (1) the plain language of N.C.G.S. § 15A-1340.14(d) states that only one conviction obtained during the same calendar week in the same court may be used to calculate prior record level; and (2) the statute does not prohibit the use of multiple convictions obtained in different courts in the same week.

**5. Sentencing— improper factors—punishing defendant for exercising right to jury trial**

Defendant is entitled to a new sentencing hearing in a double count of indecent liberties with a child and triple count of first-degree rape of a child case because the trial judge based defendant's sentence on improper factors and effectively punished defendant for exercising his constitutional right to a jury trial.

Appeal by defendant from judgments entered 20 August 2004 by Judge Evelyn W. Hill in Alamance County Superior Court. Heard in the Court of Appeals 7 March 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Diane G. Miller, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Kelly D. Miller and Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.*

STATE v. FULLER

[179 N.C. App. 61 (2006)]

GEER, Judge.

Defendant William Earl Fuller appeals his convictions for two counts of indecent liberties with a child and three counts of first degree rape of a child. On appeal, defendant argues primarily that the trial court's jury instructions erroneously denied him the right to a unanimous jury. *State v. Lawrence*, 360 N.C. 368, 627 S.E.2d 609 (2006), however, establishes that no unanimity problem occurred in this case. Defendant also contends that the trial judge's conduct throughout the trial denied him his constitutional right to an impartial tribunal, to present a defense, and to effective assistance of counsel. While we do not agree that the trial judge's behavior requires a new trial, we agree with defendant that it appears the trial judge improperly based defendant's sentence, at least in part, on defendant's decision to proceed with a jury trial rather than plead guilty. We, therefore, remand for a new sentencing hearing.

Facts

At trial, the State's evidence tended to show the following facts. Sometime in January 2003, Victoria noticed that Timothy, her 10-year-old son, and his younger brother David were unusually quiet while taking their bath.[1] Upon entering the bathroom, Victoria "didn't see anything going on," but she noticed that both children's "private areas were . . . erect." When questioned, Timothy explained he had been "on top of" David because he had not "done it in a long time." Timothy told Victoria he had "done it" before with defendant's girlfriend, Teresa Mitchell. Defendant is Timothy's father, and, at the time, Mitchell was 33 or 34 years old.

On 6 February 2003, Victoria took Timothy to see Dr. Sara Patel with complaints of a swollen and painful testicle. Dr. Patel spoke with Timothy in private and asked him if any one had hurt or touched his private area. Timothy explained defendant was "teaching him how to be . . . a man" by making Timothy have sexual intercourse with Mitchell. Dr. Patel's office contacted the Department of Social Services.

Timothy was later interviewed by Sergeant Pete Acosta of the Graham Police Department and told Sergeant Acosta that defendant had made him engage in sexual acts with Mitchell. Sergeant Acosta thereafter interviewed Mitchell, who admitted that Timothy's statements were true.

---

1. The pseudonyms Victoria, Timothy, and David will be used throughout the opinion to protect the parties' privacy.

STATE v. FULLER

[179 N.C. App. 61 (2006)]

Defendant was indicted for three counts of first degree rape and two counts of taking indecent liberties with a child. Upon a plea of not guilty, the matter went to trial before Judge Evelyn W. Hill beginning on 4 August 2004.

At trial, Timothy testified that defendant told Timothy to come into defendant's bedroom while Mitchell was naked on the bed. Defendant instructed Timothy to take off his clothes and "get on" Mitchell. Defendant then put his hand on Timothy's back and guided him "up and down" while Timothy had sex with Mitchell. Afterwards, defendant "show[ed] [Timothy] how to do it" by having sex with Mitchell while Timothy watched. Timothy also testified to possibly three other instances during which he had sex with Mitchell while defendant observed, either surreptitiously from a closet, or directly from the bed or a nearby chair.

Mitchell testified that the first instance of sexual conduct occurred at the Trails End Apartments in 2001 when defendant made Timothy have sex with Mitchell and then had sex with Mitchell himself while Timothy watched. Mitchell then testified to a second instance of sexual conduct at the Trails End Apartments during which defendant again made Timothy have sex with Mitchell while Mitchell simultaneously performed oral sex on defendant. Finally, Mitchell testified to a third sexual incident, occurring at the Park Ridge Apartments in 2002, in which defendant told Timothy he was leaving and instructed Mitchell to lay in bed naked. As defendant hid in a nearby closet, Mitchell called Timothy into the bedroom. Although Timothy came into the room as instructed, he ultimately urinated on himself. Mitchell left the room and told defendant, but defendant directed Mitchell to "do what he had told [her] to do." Mitchell then had sex with Timothy for "15 or 20 seconds" and sent Timothy back to his room.

The jury found defendant guilty of three counts of first degree rape and two counts of taking indecent liberties with a child. The trial court sentenced defendant to a prison term within the presumptive range of 336 to 413 months for one count of first degree rape. The trial court then consolidated the remaining four counts and sentenced defendant to an additional consecutive term within the presumptive range of 336 to 413 months. Defendant timely appealed to this Court.

## Indecent Liberties Jury Instructions

[1] We first address defendant's contention that the trial court committed plain error with respect to the indecent liberties charges by instructing the jury on a theory of guilt not charged in the indictments. " 'The plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to plain error, the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. . . . In other words, the appellate court must determine that the error in question tilted the scales and caused the jury to reach its verdict convicting the defendant.' " *State v. Duke*, 360 N.C. 110, 138-39, 623 S.E.2d 11, 29-30 (2005) (quoting *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986)).

Defendant argues that because the State's original indecent liberties indictments charged him as a principal, but the State's superceding indictments later charged him only as an aider and abettor, the trial court committed plain error by instructing the jury that defendant could be convicted of committing indecent liberties on a child *either* as a principal *or* as an aider and abettor. Under N.C. Gen. Stat. § 15A-646 (2005):

> If at any time before entry of a plea of guilty to an indictment or information, or commencement of a trial thereof, another indictment or information is filed in the same court charging the defendant with an offense charged or attempted to be charged in the first instrument, the first one is, with respect to the offense, superseded by the second and, upon the defendant's arraignment upon the second indictment or information, the count of the first instrument charging the offense must be dismissed by the superior court judge.

As defendant contends, pursuant to N.C. Gen. Stat. § 15A-646, the State's later indictments did, therefore, supercede the original indictments.

Nevertheless, "the chief policies underlying the indictment requirement are (1) to give the defendant notice of the charge against him to the end that he may prepare a defense and be in a position to plead double jeopardy if he is again brought to trial for the same offense and (2) to enable the court to know what judgment to pronounce in case of conviction." *State v. Jones*, 359 N.C. 832, 837, 616 S.E.2d 496, 499 (2005) (internal quotation marks omitted). Accordingly, this Court has held that "[a] bill of indictment is legally suffi-

cient if it charges the substance of the offense and puts the defendant on notice that he will be called upon to defend against proof of the manner and means by which the crime was perpetrated." *State v. Ingram*, 160 N.C. App. 224, 225, 585 S.E.2d 253, 255 (2003), *aff'd per curiam*, 358 N.C. 147, 592 S.E.2d 687 (2004). "It is only 'where the evidence tends to show the commission of an offense not charged in the indictment [that] there is a fatal variance between the allegations and the proof requiring dismissal.' " *State v. Poole*, 154 N.C. App. 419, 423, 572 S.E.2d 433, 436 (2002) (alteration original) (quoting *State v. Williams*, 303 N.C. 507, 510, 279 S.E.2d 592, 594 (1981)), *cert. denied*, 356 N.C. 689, 578 S.E.2d 589 (2003).

"Because aiding and abetting is not a substantive offense but just a theory of criminal liability, allegations of aiding and abetting are not required in an indictment . . . ." *State v. Madry*, 140 N.C. App. 600, 602, 537 S.E.2d 827, 829 (2000). Consequently, the superceding indictments simply placed defendant on notice that he would have to defend as to a different theory of guilt, but not a different criminal offense. The fact that the State presented evidence tending to show that defendant committed indecent liberties as a principal as well as an aider and abettor did not mean the State offered evidence of " 'commission of an offense not charged in the indictment,' " *Poole*, 154 N.C. App. at 423, 572 S.E.2d at 436 (quoting *Williams*, 303 N.C. at 510, 279 S.E.2d at 594), and, therefore, no fatal variance occurred. We conclude, therefore, that the trial judge did not err in instructing the jury that it could convict defendant of indecent liberties under either a principal or aiding and abetting theory. *Cf. State v. Ainsworth*, 109 N.C. App. 136, 142-43, 426 S.E.2d 410, 414-15 (1993) (concluding indictment alleging first degree rape was sufficient to convict defendant of aiding and abetting first degree rape). This assignment of error is, accordingly, overruled.

## Juror Unanimity

[2] We next consider defendant's argument that he was denied his constitutional right to a unanimous jury verdict because the State presented evidence of a greater number of sexual acts than there were charges, and the trial court's instructions and verdict sheet failed to require the jury to unanimously agree on which specific criminal acts defendant committed before finding him guilty. We disagree.

With respect to the two charges of indecent liberties, the jury was instructed that defendant could be found guilty on those charges

either as a principal or as an aider and abettor. The State offered evidence that defendant had himself committed two acts that could amount to indecent liberties: (1) engaging in sexual intercourse with his girlfriend in Timothy's presence, and (2) having his girlfriend perform fellatio on him in Timothy's presence. In addition, the State argued that defendant could be convicted of indecent liberties based on having aided and abetted Mitchell's three instances of sexual intercourse with Timothy.

Although the two theories of guilt mean that the jury may have considered a greater number of incidents than the two counts of indecent liberties charged in the indictments, our Supreme Court has held that "a defendant may be unanimously convicted of indecent liberties even if: (1) the jurors considered a higher number of incidents of immoral or indecent behavior than the number of counts charged, and (2) the indictments lacked specific details to identify the specific incidents." *State v. Lawrence*, 360 N.C. 368, 375, 627 S.E.2d 609, 613 (2006). The Court reached this conclusion because, in the context of indecent liberties, "while one juror might have found some incidents of misconduct and another juror might have found different incidents of misconduct, the jury as a whole found that improper sexual conduct occurred." *Id.* at 374, 627 S.E.2d at 612-13. This case is materially indistinguishable from *Lawrence*, which requires us to hold that no lack of unanimity occurred with respect to the two indecent liberties charges.

Regarding the three counts of first degree rape, a different analysis applies. In *Lawrence*, the Supreme Court concluded that even though the victim testified that she had had sexual intercourse with the defendant 32 separate times, there was no unanimity issue when "the evidence presented at trial tended to show five specific instances of statutory rape," the jury was given five separate verdict sheets for the rape offenses, the jury returned five guilty verdicts for the five counts of rape, and the jury was instructed generally as to the need for a unanimous verdict. *Id.* at 375, 627 S.E.2d at 613.

In this case, the verdict sheets included specific dates for the acts. The first and second sheets—each including a count of rape and a count of indecent liberties—specified that the acts occurred between 1 February 2001 and 1 September 2001. According to the State's evidence, those dates corresponded with the time frame in which Mitchell lived at the Trails End Apartments. The evidence at trial included detailed descriptions of only two incidents of rape that

occurred at the Trails End Apartments. The third verdict sheet speci-fied a date of occurrence of between 10 November ·2002 and 25 December 2002. The evidence included a detailed description of one incident of rape that occurred during that time frame. While, as in *Lawrence,* Timothy's testimony and statement to the police suggested that other incidents may have occurred, the evidence and argument focused in detail upon only three specific occasions of intercourse—the same number of instances as verdict sheets. Further, a general instruction on unanimity was given to the jury. Accordingly, under *Lawrence,* no unanimity issue exists. This assignment of error is, therefore, overruled.

### Judge Hill's Conduct During Trial

[3] Defendant next argues that the trial judge's "unprofessional behavior at trial denied defendant his state and federal constitutional rights to an impartial tribunal, to present a defense, and to the effec-tive assistance of counsel." In addressing this argument, we must determine whether "the cumulative nature of the trial judge's inap-propriate comments to the defense counsel . . . tainted the atmos-phere of the trial to the detriment of Defendant." *State v. Wright,* 172 N.C. App. 464, 470, 616 S.E.2d 366, 370, *aff'd per curiam in part,* 360 N.C. 80, 621 S.E.2d 874, *disc. review denied in part,* 360 N.C. 78, 624 S.E.2d 633 (2005). Phrased differently, we must assess whether the trial court "created an impermissibly chilling effect on the trial process and most likely affected defense counsel's ability to question the remaining witnesses, thereby prejudicing Defendant." *Id.* at 471, 616 S.E.2d at 370.

Here, there is no question that the trial judge inserted herself into the trial to an extraordinary degree, repeatedly sustaining her own *ex mero motu* objections and asking her own questions of the witnesses. Not infrequently, her objections were inconsistent with the rules of evidence, such as when she claimed incorrectly that a question nec-essarily called for hearsay. Further, she made various intemperate remarks suggesting impatience with defense counsel. A review of the entire transcript, however, does not reveal the same chilling effect present in *Wright.*

The trial judge's criticisms of defense counsel's questions did not, as was the case in *Wright,* necessarily belittle counsel. Instead, the transcript suggests that the judge was working with counsel to ensure that the questions were asked in language that a sixth grader, such as Timothy, would understand—an effort ultimately designed to

advance defendant's ability to obtain appropriate responses to counsel's questions. Other interventions of the trial judge rephrased questions of defense counsel to comply with the foundational requirements for admission of evidence such as reputation testimony. The trial judge's expressions of impatience with respect to defense counsel's questions and identification of witnesses, while perhaps unnecessarily acerbic, also reflected the fact that defendant was attempting to elicit testimony that was not admissible, and counsel was making it difficult for the trial judge to project the likely time line of the trial. With respect to some remarks, whether they were inappropriate or prejudicial depends upon the nature of the inflection used—something that cannot be determined merely from the transcript. Further, the trial judge on multiple occasions vigorously defended defense counsel's competence in open court in the face of repeated attacks by defendant and his family.

Based upon our review of the transcript, we conclude that the trial judge's conduct, although not a model of temperateness, did not reach the level of the conduct in *Wright*. This assignment of error, therefore, is overruled.

## Defendant's Sentence

**[4]** With respect to defendant's sentence, we first address his argument that the trial court erred by including in its calculation of his prior record level two separate convictions received on the same day in the same county, one of which was in district court and the other in superior court. N.C. Gen. Stat. § 15A-1340.14(d) (2005) provides as follows:

> Multiple Prior Convictions Obtained in One Court Week.—For purposes of determining the prior record level, if an offender is convicted of more than one offense in a single superior court during one calendar week, only the conviction for the offense with the highest point total is used. If an offender is convicted of more than one offense in a single session of district court, only one of the convictions is used.

"Where the words of a statute have not acquired a technical meaning, they must be construed in accordance with their common and ordinary meaning." *State v. Koberlein*, 309 N.C. 601, 605, 308 S.E.2d 442, 445 (1983). The plain language of N.C. Gen. Stat. § 15A-1340.14(d) states: Only one conviction obtained during the same calendar week *in the same court* may be used to calculate prior record level. The

STATE v. FULLER

[179 N.C. App. 61 (2006)]

statute does not, however, prohibit the use of multiple convictions obtained in different courts in the same week. Accordingly, this assignment of error is overruled.

**[5]** Finally, we consider defendant's contention that he is entitled to a new sentencing hearing because the trial judge based defendant's sentence on improper factors and effectively punished defendant for exercising his constitutional right to a jury trial.[2] A sentence within statutory limits is "presumed regular." *State v. Boone*, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977). When, however, "it can be reasonably inferred the sentence imposed on a defendant was based, *even in part*, on the defendant's insistence on a jury trial, the defendant is entitled to a new sentencing hearing." *State v. Peterson*, 154 N.C. App. 515, 517, 571 S.E.2d 883, 885 (2002) (emphasis added).

Judge Hill's comments prior to imposing two consecutive maximum presumptive range sentences of 336 to 413 months indicate that she based the sentences in part on defendant's insistence on proceeding with a jury trial. Repeatedly, the judge emphasized that defendant, in contrast to Mitchell, had not come forward and admitted what he had done, but instead had forced his son to take the witness stand and be subjected to "painful and embarrassing questions." Further, the court made multiple references to defendant's trying to manipulate the jury and the court. While the State suggests that the trial judge based the sentences on a desire to protect other children, Judge Hill's emphasis upon the pain imposed on Timothy in requiring him to testify indicates that she was basing defendant's sentence, at least in part, on his decision to go to trial.

We cannot meaningfully distinguish this case from *Peterson. See id.* at 516-17, 571 S.E.2d at 884 (ordering new sentencing hearing when trial court stated that defendant tried to be a "con artist" with the jury, that he "rolled the dice in a high stakes game with the jury"

---

2. We feel compelled to point out that the brief submitted by defendant's original appellate counsel (*not* counsel who orally argued this appeal), misrepresented the record in making this argument. In multiple places in the brief, counsel asserts that the trial judge rejected defendant's *Alford* plea because defendant would not admit that Timothy was telling the truth. These assertions are not correct. During the course of the plea colloquy, the trial judge asked defendant if he was entering into the plea of his own free will, fully understanding what he was doing. Defendant responded, "I said honestly. No, ma'am." The trial judge then stated, "Okay. The plea is rejected. We're back in trial. . . . This isn't your free will, this isn't what you want to do, that's fine. We're not going to do it. Do you understand that?" Defendant replied, "Yes, ma'am." We perceive no basis for construing the transcript in the manner defendant's original appellate counsel did.

and lost the gamble, and that the evidence of guilt was such that a rational person would never have rolled the dice by asking for a jury trial). As a result, we vacate defendant's sentence and remand for a new sentencing hearing. *See also State v. Young*, 166 N.C. App. 401, 412-13, 602 S.E.2d 374, 381 (2004) (ordering new sentencing hearing when trial court had indicated it would impose a mitigated sentence if defendant pled guilty prior to trial, but that a sentence would be from the presumptive range following trial), *disc. review denied*, 359 N.C. 326, 611 S.E.2d 851 (2005).

No error in part; remanded for a new sentencing hearing.

Judges McGEE and CALABRIA concur.