STATE OF NORTH CAROLINA v. GERALD T. PINKERTON

No. COA09-654

(Filed 20 July 2010)

**Sentencing— improper consideration of defendant's decision to go to trial—not harmless error**

The trial court improperly considered defendant's decision to exercise his right to trial by jury rather than entering a guilty plea in its sentencing decision in a rape and sexual offense case. The

---

error was not harmless beyond a reasonable doubt, even where evidence of defendant's guilt was overwhelming and defendant was sentenced in the presumptive range, because the extent to which particular sentences are treated as consecutive or concurrent is committed to the trial court's discretion. Defendant was awarded a new sentencing hearing.

Judge ROBERT C. HUNTER dissents by separate opinion.

Appeal by defendant from judgments entered 22 August 2008 by Judge James F. Ammons in Johnston County Superior Court. Heard in the Court of Appeals 11 January 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Elizabeth J. Weese, for State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender David W. Andrews, for Defendant.*

ERVIN, Judge.

Defendant Gerald T. Pinkerton appeals from judgments imposed by the trial court sentencing him to six consecutive sentences of 336 to 413 months imprisonment in the custody of the North Carolina Department of Correction based upon jury verdicts convicting him of one count of first degree rape of a child and five counts of first degree sexual offense and to a concurrent sentence of 21 to 26 months imprisonment in the custody of the North Carolina Department of Correction based upon jury verdicts convicting Defendant of five counts of taking indecent liberties with a child, all of which were consolidated for judgment. After careful consideration of Defendant's challenges to the trial court's judgments in light of the record and the applicable law, we remand for resentencing.

Factual Background

The State's evidence tended to show that, in late April 2007, Jeanne Rogers, a guidance counselor at West Clayton Elementary School, made a presentation about "Body Safety" to Amanda Sbarra's kindergarten class. After the class, a six-year-old student named Carrie[1] informed Ms. Sbarra that she had been touched inappropriately and that her "bottom hurt[] on the inside." During the weeks prior to Ms. Rogers' presentation, Carrie had been wetting her pants

1. The pseudonym "Carrie" will be used throughout the remainder of this opinion in order to protect the child's identity and for ease of reading.

STATE v. PINKERTON

[205 N.C. App. 490 (2010)]

and crying frequently at school. Ms. Sbarra took Carrie to the guidance counselor's office, where Carrie reported to Ms. Rogers that "Pops put his weenie there" while pointing to her vaginal area.[2] In addition, Carrie told Ms. Rogers that "[Pops] also blows in my tush" and that "sometimes he touches me where my poop comes out." After Carrie returned to the classroom, Ms. Rogers immediately contacted the Johnston County Department of Social Services in order to report Carrie's allegations.

On 27 April 2007, Carrie repeated the allegations that she had made against Defendant to Ms. Rogers in an interview with Dee Etheridge, a social worker with the Johnston County Department of Social Services. In that conversation, Carrie told Ms. Etheridge that "Pops" had "put his weenie into my twat by accident.[3]"

During interviews conducted in mid-August 2007 by Melanie Crumpler, a child forensic evaluator, Carrie reiterated the information that she had shared with Ms. Etheridge and identified "Pops" as an older person who played with Carrie and her younger sister. Carrie also stated that Defendant had only touched her inappropriately when she visited his home, which was located in the same trailer park where Carrie and her family lived.[4] Carrie noted that Defendant instructed her not to tell anyone about the touching because she would be prohibited from visiting him again. According to Carrie, Defendant performed various sexual acts upon her, including touching her "twat" with his "weenie," rubbing her with his "weenie," touching her where she "poops," and blowing on her "tush."

On 8 May 2007, Detective Chris Otto of the Johnston County Sheriff's Department interviewed Defendant at the Johnston County Sheriff's Office as part of his investigation into Carrie's allegations. During his interview with Detective Otto, Defendant said that Carrie had slept overnight at his home on numerous occasions, which mostly occurred on weekends, during a two-year period and that she typically slept in his bed and watched television when she was scared. According to Defendant, Carrie witnessed him ejaculate only once, explaining that he was "choking the chicken," or masturbating,

---

2. Ms. Sbarra testified that Carrie referred to Defendant as "Pops" and that she could identify Defendant because he frequently visited Carrie at school.

3. Carrie later explained to Ms. Etheridge that her "twat" was her vagina.

4. According to Carrie's mother, the family initially had a good relationship with Defendant, allowed Carrie and her sister to spend the night at Defendant's residence because Carrie's mother had to work the third shift at a convenience store, and treated Defendant like the children's grandfather.

when semen escaped and hit Carrie on "her butt and leg." According to Defendant, Carrie, who was only six years old at the time, then turned over to face him and grabbed his penis with her hand. At that point, Detective Otto terminated the interview and permitted Defendant to leave the Sheriff's Office.

On 9 May 2007, Detective Otto secured a warrant for Defendant's arrest and went to Defendant's home for the purpose of taking him into custody. After orally waiving his *Miranda* rights, Defendant stated that he would allow Carrie and her younger sister to bathe together and "run around naked" and that he would "blow on [the girls'] stomachs." Defendant later admitted that he had placed his mouth on each girl's vagina "maybe five times," though he claimed that he "never really opened their legs" and that he "did not stick [his] tongue in their vagina." While being taken to jail, Defendant also admitted, "Yes, I have stuck my penis between [Carrie's] legs. It happened in my bedroom." When asked whether Carrie was asleep or not, Defendant responded that he was unsure but that he would stick his penis between her buttocks in such a manner that did not result in penetration and "get excited that way."

On 10 September 2007, the Johnston County grand jury returned bills of indictment charging Defendant with ten counts of taking indecent liberties with a child; ten counts of first degree rape of a child under the age of 13; and ten counts of first degree sexual offense with a child under the age of 13. On 4 February 2008, the Johnston County grand jury returned superseding indictments on the first degree sexual offense cases.

The cases against Defendant came on for trial before the trial court and a jury at the 18 August 2008 criminal session of the Johnston County Superior Court. At the beginning of Defendant's trial, the State voluntarily dismissed five counts of taking indecent liberties with a child, nine counts of first degree rape of a minor child, and five counts of first degree sexual offense. On 22 August 2008, the jury found Defendant guilty of the remaining charges. After finding Defendant to be a Level III offender, the trial court sentenced Defendant to consecutive terms of 336 to 413 months imprisonment in the custody of the North Carolina Department of Correction for Defendant's single first degree rape of a minor child conviction and each first degree sexual offense conviction and to a concurrent sentence of 21 to 26 months imprisonment in the custody of the North Carolina Department of Correction for each of Defendant's convictions for taking indecent liberties with a child, all of which were con-

solidated for judgment. Defendant noted an appeal to this Court from the trial court's judgments.

## Analysis

Defendant's sole challenge to the validity of the trial court's judgments rests on a contention that the trial court improperly considered his decision to exercise his right to trial by jury rather than entering a guilty plea in its sentencing decision. After careful consideration of the record in light of the applicable law, we conclude that Defendant's contention has merit and that he is entitled to a new sentencing hearing.

Although "[a] sentence within the statutory limit will be presumed regular and valid[,] . . . such a presumption is not conclusive." *State v. Boone*, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977). "If the record discloses that the [trial] court considered irrelevant and improper matter in determining the severity of the sentence, the presumption of regularity is overcome, and the sentence is in violation of [the] defendant's rights." *Id.* (citing *State v. Swinney*, 271 N.C. 130, 133, 155 S.E.2d 545, 548 (1967)). The extent to which a trial court imposed a sentence based upon an improper consideration is a question of law subject to *de novo* review. *Swinney*, 271 N.C. at 133, 155 S.E.2d at 548.

Prior to the beginning of Defendant's trial, the State offered Defendant the opportunity to enter into a negotiated plea, under which he would plead guilty to the offenses with which he had been charged and that all of these offenses would be consolidated for judgment into a single Class B1 offense on the understanding that the State would not seek to have Defendant sentenced in the aggravated range. During a colloquy between the trial court and Defendant concerning this plea offer, which was conducted at the request of Defendant's trial counsel for the purpose of ensuring that Defendant and his trial counsel "had discussed [the plea offer] and he is in fact not accepting that offer," the following proceedings occurred:

THE COURT: If you are convicted, sir, of any rape or sex offenses, according to what your attorney and the DA tells me, you're a Class III, and so you would be sentenced to a maximum minimum term of 336 months, which is 28 years, to 413 months, which is 34-and-almost-a-half years.

If you're convicted of any of the Class F taking indecent liberties with a child, you're going to

be sentenced to 21 months at the maximum minimum and a 26 months as a maximum. If you're convicted of all the crimes, you could be sentenced to a maximum minimum of 178-and-a-half years with a maximum of 219-and-a-half years. I think it's safe to say none of us are going to live that long.

As I understand it from talking to the attorneys during the pre-trial, an offer was made to you that you could plead guilty to all of these, they'd be consolidated into one Class B1 felony, and you would be facing somewhere between 269 months minimum and 336 minimum. It would be up to me to determine what the appropriate sentence was, and the corresponding maximums would be up to 413 months.

. . . .

THE COURT: As I understand it, your attorney communicated this offer to you. Is that correct?

[DEFENDANT]: Yes, sir.

THE COURT: Did you have an opportunity to discuss that offer with him?

[DEFENDANT]: Yes, I did.

THE COURT: Were you completely satisfied with the amount of time that you spent discussing the offer with him?

[DEFENDANT]: Well—

THE COURT: I'm not talking about the offer, but were you satisfied with the amount of time you spent going over it with him?

[DEFENDANT]: Oh, yes. Yes, sir.

. . . .

THE COURT: . . . He tells me that you have rejected that offer—that you have, prior to today, rejected that offer. Is that correct?

[DEFENDANT]:  Yes, sir.

THE COURT:    Do you fully understand what the offer was and what your exposure to prison would have been had you pled guilty?

[DEFENDANT]:  Yes.

THE COURT:    Do you fully understand what your exposure to prison is if you're found guilty of all of these charges?

[DEFENDANT]:  Yes, sir. I do.

THE COURT:    Do you think you need any additional time to discuss this offer with your attorney?

[DEFENDANT]:  No, sir, because I'm 68, and so whichever one is a life sentence. So it makes no difference, if that makes any sense.

THE COURT:    Well, yeah. It makes sense that you would see it like that.

[Pause.]

THE COURT:    And, according to the law, you're supposed to serve the minimum. I don't know if that would continue to be true in 10 years or 20 years from now, whether you would continue to have to serve the minimum. I do know that having a minimum of 28 years is a whole lot different than having a minimum of 168 years. You would never get out, no matter what happens, no matter how crowded the prison systems get, no matter who the governor is. If you've got 168-year sentence, they're never going to let you out.

You do have some prayer, I assume, of getting out with a minimum in the range of 25 to 28 years, but it's your life. It's not mine, and I—the only thing I want to be clear upon is that—for your sake, your attorney's sake, and the justice system's sake is that what your attorney has told me is what your understanding is, that this offer was made to you; that you, of your own free will,

STATE v. PINKERTON

[205 N.C. App. 490 (2010)]

> rejected the offer; and that you did not want to avail yourself of this offer.

[DEFENDANT]: Yes, sir.

THE COURT:    Okay.

After the jury convicted Defendant of one count of first degree rape, five counts of first degree sex offense, and five counts of taking indecent liberties with a child and prior to the imposition of sentence, the trial court permitted Defendant to address the court in accordance with N.C. Gen. Stat. § 15A-1334(b). At that point, the trial court had the following exchange with Defendant:

THE COURT:    All right. Mr. Pinkerton, you've been convicted on all counts. This is your opportunity to say anything that you'd like. I'm glad to hear anything you have to say to the Court, to the victim, to your family, to the public at large.

You're not required to say anything, but, if you'd like to say something, I'll be glad to listen to it.

[DEFENDANT]: [Stood.] Yes, sir. I would. I'd like to apologize. I loved you all. I really did. That's all I have to say.

THE COURT:    All right. You can have a seat, sir. This is going to take a while.

After a pause, the trial court made the following comments before actually pronouncing sentence upon Defendant:

THE COURT:    Now, Mr. Pinkerton, prior to calling the jury in, you had an opportunity to plead guilty in a plea bargain where the Court offered you the minimum sentence for one crime which would have been about 22 years, and you explained to me that you thought 22 years or 200 years was the same, that it was a life sentence for you.

[DEFENDANT]: Yes, sir.

THE COURT:    But, if you truly cared—if you had one ounce of care in your heart about that child—you wouldn't have put that child through this. You would have pled guilty, and you didn't. That's your choice.

[DEFENDANT]:  That was my choice. Yes, sir. I realize that.

THE COURT:  I'm not punishing you for not pleading guilty. I am not going to punish you for not pleading guilty. I would have rewarded you for pleading guilty.

[Pause.]

THE COURT:  Your sentence is not in any way because you didn't plead guilty. I'm sentencing you to what I think is appropriate.

At that point, the trial court imposed the combination of consecutive and concurrent sentences outlined above.

Although "[a] sentence within the statutory limit will be presumed regular and valid[,] . . . such a presumption is not conclusive." *Boone*, 293 N.C. at 712, 239 S.E.2d at 465. "If the record discloses that the [trial] court considered irrelevant and improper matter in determining the severity of the sentence, the presumption of regularity is overcome, and the sentence is in violation of [the] defendant's rights." *Id.* (citing *Swinney*, 271 N.C. at 133, 155 S.E.2d at 548). A "criminal defendant may not be punished at sentencing for exercising [his] constitutional right to a trial by jury." *State v. Cannon*, 326 N.C. 37, 39, 387 S.E.2d 450, 451 (1990) (citing *Boone*, 293 N.C. at 712, 239 S.E.2d at 465). Put another way, a defendant's decision to exercise his right to proceed to trial rather than enter a plea of guilty may not be a factor in the trial court's sentencing determination. *State v. Gantt*, 161 N.C. App. 265, 271, 588 S.E.2d 893, 897 (2003), *disc. review denied*, 358 N.C. 157, 593 S.E.2d 83 (2004). Where it can be "reasonably inferred" from the trial court's comments that the sentence was imposed, even in part, because of the defendant's demand for a jury trial, the "defendant's constitutional right to trial by jury has been abridged, and a new sentencing hearing must result." *Id.* (quoting *Cannon*, 326 N.C. at 39, 387 S.E.2d at 451). As a general proposition, however, there must be an " 'express indication of improper motivation.' " *Gantt*, 161 N.C. App. at 272, 588 S.E.2d at 898 (quoting *State v. Johnson*, 320 N.C. 746, 753, 360 S.E.2d 676, 681 (1987)). The extent to which a trial court imposed a sentence based upon an improper consideration is a question of law subject to *de novo* review. *Swinney*, 271 N.C. at 133, 155 S.E.2d at 548.

According to well-established principles of North Carolina law, a trial judge does not err by simply engaging in a colloquy with a criminal defendant for the purpose of ensuring that the defendant under-

stands and fully appreciates the nature and scope of the available options. *State v. Tice*, 191 N.C. App. 506, 513, 664 S.E.2d 368, 373 (2008) (stating that a pretrial colloquy between the trial court and the defendant was merely intended to "ensur[e] that defendant was fully informed of [the] risk he was taking given that he had previously rejected a plea that would have resulted in a misdemeanor sentence"); *State v. Crawford*, 179 N.C. App. 613, 619-20, 634 S.E.2d 909, 914 (2006), *disc. review denied*, 361 N.C. 360, 644 S.E.2d 363 (2007) (stating that "the trial court's remarks prior to trial [that] served to clarify the terms of the offered plea bargain and eliminate questions regarding a subsequent sentence" did "not allow a reasonable inference that the trial court imposed a presumptive sentence as a result of defendant's decision to exercise his right to a jury trial"); *State v. Poag*, 159 N.C. App. 312, 324, 583 S.E.2d 661, 670, (2003), *appeal dismissed and disc. review denied*, 357 N.C. 661, 590 S.E.2d 857 (stating that "[t]he trial court's decision to state that it would impose a concurrent sentence as part of an accepted plea bargain was an effort to make the plea bargain more definitive and eliminate any question that defendant might have about the resulting sentence" and does not, given the absence of any indication "that the trial court threatened to impose a harsher sentence if defendant rejected the plea offer" or "indicated it was imposing a harsher sentence as a result of defendant's rejection of the plea offer," permit "a reasonable inference that the trial court imposed a consecutive sentence as a result of defendant's decision to exercise his right to a jury trial"). Furthermore, a mere reference to a defendant's decision to reject a negotiated plea, without any specific indication that the trial court utilized the defendant's refusal to enter a guilty plea as the basis for determining the defendant's sentence, does not necessitate an award of appellate relief. *Gantt*, 161 N.C. App. at 272-73, 588 S.E.2d at 898 (stating that trial court's statement prior to the imposition of sentence that the defendant had been given " 'one opportunity where you could have exposed yourself probably to about 70 months but you chose not to take advantage of that" did not "rise to the level of the statements our Courts have held to be improper consideration of a defendant's exercise of his right to a jury trial"). Finally, adverse comments on the strength of the defendant's evidence at trial or on the credibility of specific comments made by the defendant during the sentencing hearing do not amount to an impermissible consideration of the defendant's decision to exercise his or her right to a trial by jury, even if those comments include incidental references to the defendant's failure to accept a proffered guilty plea. *Tice*, 191 N.C. App. at 513-16,

664 S.E.2d at 373-75 (stating that, taken in context, the trial court's comments that the defendant had " 'to be feeling awfully dumb [] right now" since he had had " 'ample opportunities to dispose of this case' " " 'in a more favorable fashion and you chose not to do it' " were, taken in context, an indication that the trial court sentenced the defendant based on its "conclusion that defendant had submitted false testimony and 'fabricated' testimony from other witnesses"); *State v. Person*, 187 N.C. App. 512, 528, 653 S.E.2d 560, 570 (2007), *rev'd in part on other grounds*, 362 N.C. 340, 663 S.E.2d 311 (2008) (stating that the trial court's comment that the defendant had declined to enter a negotiated plea was a comment "on defendant's lack of credibility when claiming he wanted 'another opportunity to prove' himself as an 'honorable law abiding, caring loving man [and] citizen' and that he had been misled by 'the wrong crowd' "). On the other hand, explicit comments by trial judges that a defendant will receive a more severe sentence if he or she goes to trial and is convicted than he or she will receive if a proposed negotiated plea is accepted will result in reversible error. *State v. Haymond*, —— N.C. App. ——, ——, 691 S.E.2d 108, 123-24 (2010) (holding that the trial court impermissibly sentenced defendant on the basis of his refusal to enter a negotiated guilty plea based on its comments both before and after trial that " 'the best offer you're gonna get [is] that ten-year thing' "); *State v. Hueto*, —— N.C. App. ——, ——, 671 S.E.2d 62, 67-68 (2009) (holding that the trial court impermissibly sentenced defendant on the basis of his refusal to enter a negotiated guilty plea based on its comments that, " 'if you say no, I want to have my jury trial,' " " 'then I will not be able to give  you the help that I can probably give you at this point' " and that, " 'if they find you guilty of the charges against both of these young girls, it will compel me to give you more than a single B-1 sentence, and I would have to give you at least two . . . and maybe more' "); *State v. Young*, 166 N.C. App. 401, 411-13, 602 S.E.2d 374, 380-81 (2004), *disc. review denied*, 359 N.C. 326, 611 S.E.2d 851 (2005) (holding that the trial court impermissibly sentenced defendant on the basis of his refusal to enter a guilty plea on the basis of its comments that, " 'if you pled straight up I'd sentence you at the bottom of the mitigated range,' " but that " 'if you go to trial and [are] convicted,' " the defendant "would definitely get a sentence in the presumptive range' "); *State v. Pavone*, 104 N.C. App. 442, 445-46, 410 S.E.2d 1, 3 (1991) (holding that the trial court impermissibly sentenced defendant on the basis of her refusal to enter a negotiated guilty plea on the basis of its comments following the return of the jury's verdict that " 'I understand that there were nego-

tiations with a view toward reaching an agreement with respect to your verdict and sentencing before the trial that were not productive;' " that, " 'having moved though the jury process and having been convicted, it is a matter in which you are in a different posture;' " and that " '[y]ou tried the case out; this is the result' "). In addition, this Court has also held that comments that defendant " 'tried to be a con artist with the jury,' " that he " 'rolled the dice in a high stakes game with the jury' " and " 'lost that gamble,' " and that no " 'rational person would [e]ver have rolled the dice and asked for a jury trial with such overwhelming evidence' " not made in the context of a response to comments made by the defendant or the defendant's credibility, *State v. Peterson*, 154 N.C. App. 515, 518, 571 S.E.2d 883, 885 (2002), or repeated statements that defendant, unlike his codefendant, "had not come forward and admitted what he had done," so as to "force[] his son to take the witness stand and be subjected to 'painful and embarrassing questions' " and "multiple references to defendant's trying to manipulate the jury and the court," *State v. Fuller*, 179 N.C. App. 61, 71, 632 S.E.2d 509, 516 (2006), *appeal dismissed*, 360 N.C. 651, 637 S.E.2d 180 (2008), evidenced impermissible use of a Defendant's failure to plead guilty as a factor in the imposition of sentence. Although the facts revealed by the present record are not identical to those found in any of the cases that we have previously decided, we conclude that, on balance, the trial court's comments disclose that it inappropriately considered Defendant's failure to enter a guilty plea in imposing sentence.[5]

The trial court's initial colloquy with Defendant prior to the beginning of the trial does not contain any impermissible statements. Instead, the trial court appears to have simply explained the options available to Defendant pursuant to a request made by his trial counsel. Had the trial court stopped there, this case would have been controlled by *Tice*, *Crawford*, and *Poag*. However, the trial court's additional comments following the return of the jury's verdict lead us to

---

5. Our dissenting colleague contends that the facts of this case most closely resemble those at issue in *Tice* and that we should find no error here for that reason, among others. A careful examination of the trial court's comments in *Tice* indicates that they were, as this Court stated, "focus[ed] on [the trial court's] conclusion that defendant had submitted false testimony and 'fabricated' testimony from other witnesses." *Tice*, 191 N.C. App. at 515, 664 S.E.2d at 374. The trial court's comments in this case were not, however, so singularly focused on the perceived weaknesses of Defendant's defense. In addition, the trial court's comment that "I am not going to punish you for not pleading guilty," but "I would have rewarded you for pleading guilty" in this case is unlike anything that was said in *Tice*. As a result, the trial court's statements in this case were much more than a "comment[] on the defendant['s] missed opportunity to 'dispose' of their cases in a more favorable manner."

reach an entirely different conclusion. After affording Defendant his statutory right to make an allocution, the trial court paused, and then stated that "if you truly cared—if you had one ounce of care in your heart about that child—you wouldn't have put that child through this." Instead, according to the trial court, Defendant "would have pled guilty, and you didn't." Although we might have been able to treat this comment as an expression of the trial court's failure to believe Defendant's claim that he would "like to apologize" and that he "loved you all" of the type held insufficient to require an award of appellate relief in *Tice* and *Person*, as compared to the repeated adverse comments on the harm done to the victim resulting from the necessity for the victim to testify at trial at issue in *Fuller*, the fact that the next thing that the trial court said was that "I'm not punishing you for not pleading guilty" and that "I would have rewarded you for pleading guilty" convinces us that the trial court did, in fact, base the sentence that was imposed upon Defendant at least in part on the fact that he chose to exercise his right to trial by jury. While the trial court disclaimed any intention of punishing Defendant for electing to go to trial rather than entering a negotiated plea and claimed that the sentence imposed upon Defendant was "appropriate," the trial court's statement that "I would have rewarded you for pleading guilty" is, taken in context, tantamount to the type of statement that led us to require resentencings in *Haymond, Hueto, Young,* and *Pavone*.[6] Put another way, it is difficult for us to read the trial court's comment that he would have rewarded Defendant for pleading guilty as anything other than an acknowledgment that Defendant's sentence was heavier than it otherwise would have been had Defendant not exercised his right to trial by jury. As a result, we conclude that the trial court erred by impermissibly considering Defendant's decision to decline to accept the negotiated plea that was offered to him prior to trial in imposing sentence.

The dissent argues that we should leave the judgments imposed by the trial court undisturbed on the grounds that there is "nothing improper about the trial court's acknowledgment that he would have 'rewarded' [Defendant] for pleading guilty," given that "every plea

6. Our dissenting colleague places considerable emphasis on his conclusion that there was no reason to disbelieve the trial court's statement "that he *was not* punishing defendant for going to trial." We do not, needless to say, wish to be understood as questioning the trial court's credibility. Instead, our concern arises from the fact that the trial court's statements, taken in their entirety, indicate that the fact that Defendant failed to enter a guilty plea was a factor in the trial court's sentencing determination. *Gantt*, 161 N.C. App. at 271, 588 S.E.2d at 897. Put another way, the issue is not the trial court's credibility; the issue is what the words that the trial court used meant.

bargain serves to reward the defendant for admitting his or her own guilt and saving the State the time and expense of trial."[7] The fundamental problem with this logic is that it would, if adopted, eviscerate the rule against punishing convicted criminal defendants for exercising their federal and state constitutional right to trial by jury by allowing a prohibited end to be achieved indirectly. Although a trial judge does, of course, have an obligation to consider all of the information that is gained during the course of a contested jury trial in sentencing a convicted defendant, he or she cannot, under well-established principles of federal and state constitutional jurisprudence, take the fact that the defendant rejected a negotiated plea into account in his or her sentencing decision. In context, the trial court's comments in this case indicate that Defendant's refusal to accept the "reward" inherent in the plea offer that was extended to him was a factor in the trial court's sentencing decision. Upholding the sentencing decision in this case on the basis that it would have been appropriate to "reward" Defendant for entering negotiated pleas is tantamount to sentencing him more harshly for pleading not guilty and is simply inconsistent with decisions such as *Hueto*, —— N.C. App. at ——, 671 S.E.2d at 67 (2009) (in which the trial court was reversed for telling the defendant that, if he rejected a proffered guilty plea, " 'then I will not be able to give you the help that I can probably give you at this point' " and that, " 'if they find you guilty of the charges against both of these young girls, it will compel me to give you more than a single B-1 sentence, and I would have to give you at least two . . . and maybe more' "), and *Haymond*, —— N.C. App. at ——, 691 S.E.2d at 123 (in which the trial court was reversed for telling the defendant both before and after trial that " 'the best offer you're gonna get [is] that ten-year thing' "), since the trial judges in those cases offered to "reward" the defendants with negotiated pleas and then imposed more severe sentences upon them when the proffered rewards were rejected. As a result, we are simply not persuaded by the logic advanced by our dissenting colleague.

7. Our dissenting colleague states that "[t]he reward is, in actuality, offered by the State, not the trial court." Although this assertion may accurately describe many negotiated pleas, that does not appear to be the case with respect to the negotiated plea offered to Defendant, which provided that all of the charges that were pending against him would be consolidated into a single Class B1 felony for judgment and that Defendant would receive a minimum of between 269 and 336 months imprisonment. Pursuant to N.C. Gen. Stat. § 15A-1023(b), the proposed negotiated plea offered to Defendant was subject to approval by the trial court. As a result, at least in this case, the "reward" offered to Defendant would have been provided by both the State and the trial court, assuming that the trial court was willing to approve the plea arrangement offered by the State.

Finally, the State contends that, even if the trial court did err by considering Defendant's decision to exercise his right to trial by jury in imposing sentence, any such error was harmless because the evidence against him was overwhelming and because the trial court sentenced Defendant in the presumptive range. Although an error of constitutional magnitude, such as this one, can be deemed harmless in the event that the State demonstrates that it is harmless beyond a reasonable doubt, N.C. Gen. Stat. § 15A-1443(b), no such demonstration has been made in this instance. The fact that the evidence of Defendant's guilt was overwhelming and that Defendant was sentenced in the presumptive range does not suffice to demonstrate the absence of prejudice given the fact that the extent to which particular sentences are treated as consecutive or concurrent is committed to the trial court's discretion. N.C. Gen. Stat. § 15A-1340.15(a). As a result, we conclude that Defendant is entitled to a new sentencing hearing.

REMANDED FOR RESENTENCING.

Chief Judge MARTIN concurs.

Judge ROBERT C. HUNTER dissents by separate opinion.

HUNTER, Robert C., Judge, dissenting.

After careful review of the colloquy between defendant and the trial court during sentencing, I detect no indication of improper motivation by the trial court judge in imposing defendant's sentence. Accordingly, I respectfully dissent from the majority's holding in this case.

The majority aptly states that, according to well-established principles of North Carolina law: (1) "a trial judge does not err by simply engaging in a colloquy with a criminal defendant for the purpose of ensuring that the defendant understands and fully appreciates the nature and scope of the available options"; (2) "a mere reference to a defendant's refusal to enter a guilty plea as the basis for determining the defendant's sentence, does not necessitate an award of appellate relief"; and (3) "adverse comments on the strength of the defendant's evidence at trial or on the credibility of specific comments made by the defendant during the sentencing hearing do not amount to an impermissible consideration of the defendant's decision to exercise his or her right to a trial by jury, even if those comments include incidental references to the defendant's failure to accept a proffered

guilty plea." However, "explicit comments by trial judges that a defendant will receive a more severe sentence if he or she goes to trial and is convicted than he or she will receive if a proposed negotiated plea is accepted" will result in reversible error.

The majority and I agree that there was nothing improper about the trial court's statements to defendant during a pre-trial hearing, which was requested by defense counsel. During the hearing, the trial court sought to ensure that defendant understood the plea offered and the potential term of imprisonment should he reject that offer. The State proposed that if defendant, a Class III offender, pled guilty to all charges, the State would request that the trial court consolidate the convictions and sentence defendant to one Class B1 felony, which would have resulted in a sentence of 269 to 413 months imprisonment. If defendant was convicted by a jury of any one of the felonies charged, he would have faced a prison sentence of 336 months to 413 months. The trial court informed defendant that if he proceeded to trial and was convicted of all charges, he could face 178-and-a-half years to 219-and-a-half years imprisonment. The trial court asked defendant: "Do you fully understand what the offer was and what your exposure to prison would have been had you pled guilty?" Defendant responded: "Yes." The trial court then asked defendant: "Do you fully understand what your exposure to prison is if you're found guilty of all of these charges?" Again, defendant answered affirmatively. Defendant made it clear that he was knowingly rejecting the plea offer.[8]

It appears that the majority and I also agree that the trial court judge did not err when he commented upon defendant's allocution, during which defendant apologized to the victim's family and stated that he "loved [them] all." The trial judge responded: "[I]f you had truly cared—if you had one ounce of care in your heart about that child—you wouldn't have put that child through this." As the majority correctly states, this reflexive comment by the trial judge should be treated as a mere expression of the trial court's reticence to trust the sincerity of defendant's allocution, as similarly seen in *State v. Tice*, 191 N.C. App. 506, 513-15, 664 S.E.2d 368, 373-74 (2008), and *State v. Person*, 187 N.C. App. 512, 527-28, 653 S.E.2d 560, 570 (2007), *rev'd in part on other grounds*, 362 N.C. 340, 663 S.E.2d 311 (2008).

However, the majority specifically takes issue with the trial judge's subsequent statement that "I'm not punishing you for not

8. We note that defendant was 68-years-old at the time of trial.

pleading guilty" and that "I would have rewarded you for pleading guilty." The majority states: "[I]t is difficult for us to read the trial court's comment that he would have rewarded Defendant for pleading guilty as anything other than an acknowledgment that Defendant's sentence was heavier than it otherwise would have been had Defendant not exercised his right to trial by jury." The majority goes on to conclude "that the trial court erred by impermissibly considering Defendant's decision to decline to accept the negotiated plea that was offered to him prior to trial in imposing sentence." I disagree with this holding, in part, because I see nothing improper about the trial judge's acknowledgment that he would have "rewarded" defendant for pleading guilty. Clearly, every plea bargain serves to reward the defendant for admitting his or her guilt and saving the State the time and expense of trial. The reward is, in actuality, offered by the State, not the trial court. In approving the bargain reached between the State and the defendant, the trial court is then, in effect, rewarding the defendant with a sentence that is presumably less than it would have been had the defendant been convicted by a jury. Once the State has proceeded to try the defendant and he is convicted of the crimes charged, the State no longer seeks to reward the defendant. At that point, the trial court has heard all of the evidence presented, which resulted in a conviction by the jury, and is responsible for sentencing defendant for the crimes he committed; in this case, ten counts of sexual crimes against a child. At this stage in the trial process, it would be illogical to expect the trial judge to reward defendant and I see no impropriety in the trial judge making the truthful assertion that defendant would have been rewarded had he agreed to the State's bargain.

Certainly a trial judge is not permitted to threaten a defendant with a harsher penalty if he or she does not accept the plea bargain offered by the State; however, I see no error in the trial court's comment, which took place after trial, that had defendant accepted the plea bargain, he would have been rewarded. If the scenario were reversed, and defendant had accepted the plea bargain prior to trial, there would have been no objection to a statement by the trial court that it was rewarding defendant for pleading guilty.

Furthermore, the fact that a defendant would have received a *reward* for pleading guilty does not automatically mean that a defendant is *punished* for going to trial. The majority seems to reach the opposite conclusion. The majority states that if my "logic" is adopted, "it would . . . eviscerate the rule against punishing convicted

criminal defendants for exercising their federal and state constitutional right to trial by jury by allowing a prohibited end to be achieved indirectly." That is simply not the case. As seen here, a criminal defendant is usually informed by the trial court that he will be exposing himself to a longer term of imprisonment if he goes to trial and is convicted. A harsher penalty is a risk that the defendant bears when he elects to reject a plea bargain and proceeds to trial. That harsher penalty is *not* a punishment for rejecting the plea. The trial judge is entitled to sentence the defendant to a term of imprisonment for each crime he is convicted of, and, in his discretion, to run those sentences concurrently or consecutively. N.C. Gen. Stat. § 15A-1340.15(a) (2009). I support reversal of a sentence where the trial judge makes explicit statements prior to trial that he will give defendant a harsher penalty if he does not accept the plea bargain, or the trial judge's statements at the sentencing hearing clearly establish that he is punishing the defendant for not accepting the plea bargain offered by the State. Neither of these situations are present here.

With regard to this case, I see nothing in the trial judge's comments that would lead me to believe that he was punishing defendant for going to trial. To the contrary, the trial judge specifically stated that he was *not* punishing defendant for going to trial, and I see no reason to disbelieve him. The trial court proceeded to sentence defendant within the presumptive range to five consecutive sentences for the five counts of first degree sex offense. The trial court then consolidated defendant's convictions for five counts of taking indecent liberties with a child. The trial court was statutorily permitted to impose this sentence, it is "presumed regular and valid," *State v. Boone*, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977), and I see no improper basis for the sentence.

The majority finds the trial judge's comments in the case *sub judice* to be similar to the comments made in *State v. Haymond*, —— N.C. App. ——, ——, 691 S.E.2d 108, 123 (2010); *State v. Hueto*, 195 N.C. App. 67, 77-78, 671 S.E.2d 62, 68 (2009); *State v. Young*, 166 N.C. App. 401, 411-13, 602 S.E.2d 374, 380-81 (2004), *disc. review denied*, 359 N.C. 326, 611 S.E.2d 851 (2005); and *State v. Pavone*, 104 N.C. App. 442, 445-46, 410 S.E.2d 1, 3 (1991). I disagree and find the trial court's comments to be, in substance, most similar to those seen in *Tice*. As in the present case, the trial judge in *Tice* informed the defendant at a pre-trial hearing that the defendant ran the risk of a "significant increase" in his sentence if he were to be convicted at trial. 191 N.C. App. at 512, 664 S.E.2d

at 373. Once the defendant was convicted by a jury, the trial court made the following statement at sentencing:

> Mr. Tice, I imagine you've got to be feeling awfully dumb along right now. You've had ample opportunities to dispose of this case. *The State has given you ample opportunity to dispose of it in a more favorable fashion and you chose not to do so.* And I'm not sure if you thought that you were smarter than everybody else or that everybody else was just dumb.

*Id.* at 513, 664 S.E.2d at 373 (emphasis added). In *Tice,* this Court rejected the defendant's argument "that the trial judge's language during sentencing indicate[d] that defendant received the sentences that he did because he chose to exercise his right to a jury trial rather than, in the words of the judge, 'dispose [of the case] in a more favorable fashion.' " *Id.* at 514, 664 S.E.2d at 374. Though the judge's comments in *Tice* do not mirror the comments made in the case at bar, it is clear that the trial judges in both situations were commenting on the defendants' missed opportunity to "dispose" of their cases in a "more favorable fashion." *Id.; see also State v. Crawford,* 179 N.C. App. 613, 618, 634 S.E.2d 909, 913 (2006) (holding that trial court did not err in stating "I just want to make sure you understand that so in the event you are convicted, I don't want you to think that no one gave you an opportunity to mitigate your losses"), *disc. review denied,* 361 N.C. 360, 644 S.E.2d 363 (2007). The trial judge in this case characterized that missed opportunity as a reward that defendant did not act upon. Again, I see no impropriety in that characterization.[9]

In sum, I would hold that the trial court's sentencing was free from error and affirm the judgment entered because the trial court's remarks did not overcome the presumption that the trial court's sentence was valid. The fact that the trial judge stated that he would have rewarded defendant for pleading guilty is an accurate statement of fact given the inherent nature of our plea bargaining system which, in effect, rewards criminal defendants for admitting guilt, thereby avoiding a lengthy and expensive trial by jury. After trial, there was noth-

---

9. The majority points out that the analysis in *Tice* focused heavily on the fact that the trial judge was commenting on the defendant's presentation of false testimony. That is true; however, the trial court's statements, as quoted *supra,* directly relate to the defendant's decision to reject the more favorable plea offer. The defendant specifically objected to that statement, and this Court did not find any impropriety. Naturally, every colloquy between a defendant and the trial judge is going to be unique; however, I contend that the statements made in *Tice* are most similar to those made in the case at bar, and this Court found no error.

ing for which to reward defendant. Defendant was found guilty by a jury of all ten charges and the trial judge, after hearing the evidence regarding the horrible crimes perpetrated by defendant, sentenced defendant to a term of imprisonment that he determined was appropriate. I find no reason to disbelieve the trial judge's assertion that he was not punishing defendant with the sentence he imposed.